LOTTINGER, Judge.
This is a workmen’s compensation proceeding wherein the plaintiff claims' to be totally and permanently disabled and seeks benefits in the amount of $30 per. vice-k for 400 weeks, together -with ^attorney ¡-fees,, medical expenses -and a penalty ,o:f 12%; for the arbitrary refusál of the defendants to pay the amounts.due.: The petition alleges,that on. May 24, 1954, the plaintiff was- in the employ of one- C. P.- Mitchell, an agent of one M. "A.-Pope,- engaged in loading.and hauling pulpwood. .It is set forth that about 4:30 P.M. on said day, the petitioner ‘.‘was loading pulp wood onto the truck and that too heavy a pi'ece of wood-was placed on petitioner’s shoulders ;tó be placed upon the truck and that petitioner’s back was injured.'to-such--an extent that he was unable to unload the truck.-” It is further set forth that, on 'the following day, -the petitioner reported for work but was unable to do any work. No, allegation is made concerning the exact nature o-f the alleged injuries, the petition merely concluding that the plaintiff is totally and permanently disabled.
Following the filing of an exception of vagueness, a supplemental and amended petition was filed wherein it was set forth that C. P. Mitchell, was an independent contractor dealing with M. A. Pope. It was further alleged that the injuries sustained by the plaintiff were “Sacro-illiac injuries which caused great pain to. petitioner and caused one leg to- be shorter than the other.” The defendants then answered, generally denying all of the allegations of both the original and supplemental .petitions. Subsequently, another , supplemental petition was filed wherein it was alleged, that a reexamination'of the plaintiff by a Dr. J. II. McClendon on November 2,. 1954, revealed that'“He has a left inguinal hernia of traumatic origin or a potential left inguinal hernial’ A.supplemental answer was then filed by the. defendants denying the allegations of the'second supplemental petition.
Following trial of the matter in the court below, the trial judge rendered judgment in fav.or ■ of the plaintiff and the matter is now before us on an appeal taken by the defendants» :
The trial, ju^ge rendered written reasons for judgment, which we set out herewith in fun: '' ' , . ,
“It ds this 'court’s 'opinion that this plaintiff, is-, suffering' from-.a' disability-caused or-'aggravated by the injury received by him on May 24, 1954, while ■employed by-C. P. Mitchell,- independent contractor for M. A. Pope. From the appearance j and .attitude of the *719 plaintiff while testifying; this court'' is convinced that he is not a malingérer.
“As to just what causes the pain of which he complains, this court does not know, nor’ is it up to plaintiff to- prove that exact physical condition which causes the pain.
“On-the report of Dr. Dowell dated April 8, 1955, is this statement:
“,‘It.is possible that the transitional vertebrae noted in X-ray with the accessory articulation is causing some back pain.’
“The doctors in this case are agreed that there is no inguinal hernia at the present time, although Dr. Osborn says there might have been an inguinal injury at the time of the accident, or injury to some other organs if there was sharp pain at the time of the accident. Dr. McClendon claims a potential hernia but considering all the evidence, this court believes it is not a herpia or potential hernia that. is causing the pain.
“Dr. Aycock says that he ‘gave him the benefit of the doubt,’ and treated him for strain on his first visit, and on his second visit he found that plaintiff was suffering from epididymitis and sent him to Lallie Kemp hospital where he was treated for this condition and that at the time of the trial plaintiff was not suffering from epididymitis, but this condition had entirely cleared up.- Therefore, the suffering of which plaintiff was complaining at the time of the trial was -evidently caused by something other than by the epididy-mitis, for which he was treated at Lal-lie Kemp hospital.
“It is this court’s opinion that this ■plaintiff, at the time of the trial, was not able to do work of -the same character he was doing at the time of the injury. Therefore, the court will hold •that he is entitled to '65% of his wages ■ during the period of his disability, no_ , to-exceed 400 weeks, with the right, reserved to the defendants to have this patient givén- 'a thorough’:' diagnostic examination to’ see exactly what-is the exact- nature of' his disability; and tó have same corrected. - 1 :
“In view of the evidence concerning the earnings o,f the plaintiff, including his own testimony, the court believes that $25.00 per week was his average wage, 65% of which would be $16.25 per week. - '
“In view of the conflicting opinions of the doctors in1 this matter, the refusal of the claim until .final determination 'by the court would not seem ar-bit-rary, 'and the court will, therefore, refuse penalties and attorney’s fees, except of course 5% per annum interest from date of each past due installment until paid.
“The court finds no doctor bills paid by the plaintiff and will, therefore refuse claim for doctor bills at this time.
“As to the expert witness fees for the doctors, all doctors summoned in this case being local general practitioners who were away from their offices only a portion of the day, the court rules that a fee of $25.00 each be approved.
' “Therefore, the’ court will render judgment in favor of plaintiff and against defendants in the sum of $16.25 per Week for the period of disability, not to exceed 400 weeks, beginning May 24, 1954, with 5% per annum interest on each past due installment until paid.”
An examination of the record convinces us that the -trial -judge committed manifest error in awarding the plaintiff compensation benefits.
The plaintiff gave the following version of the accident:.
“A.. The boys was pushing a stick of wood on me and after I got it up on me, well, I didn’t have it quite far enough up on me, I kinda released’ it a little bit so I could pull it back up on me and that is when I staggered. I *720 rolled it .off on-the graundand then I went and laid down and that next-day I'came back out to try to work and. I couldn’t make it and I told Reverend I couldn’t make it and he said if I’d wait á while he would carry me to the doctor and get me a prescription and I did.” ' ; '
It is clear 'from the testimony of the plaintiff and other witnesses that he has done no work since the alleged accident.
Four doctors .testified in-the matter. Dr. J. H. McClendon, testifying on behalf of the plaintiff, stated that he could find' no objective or physical .reasons for pain,- and that while he found one leg to be shorter than the other, he was of the opinion that his condition existed before the occurrence of the alleged accident. This doctor testified that the plaintiff had no inguinal hernia but at most, only'a potential hernia.
Dr. Clifton G. Ayco.ck testified that he examined the plaintiff on May 26, 1954, which was two days after the alleged accident. This doctor found the plaintiff suffering from an infection of the left epididy-mis and testicles, infectious in origin, and was referred to the Charity Hospital at Independence, Louisiana. This doctor examined the plaintiff on five different1 occasions through April 7, 1955', and never found that he had a,hernia. On the .Occasion of his last- .examination,, the doctor said that he found nothing, wrong with plaintiff which would disqualify, him from joining .the Army, being eligibly for life insurance and doing hard, manual labor.
Dr. Retus W. Osborn, Jr. examined the plaintiff on the day of the- trial (April 13, 1955)', and stated that the plaintiff had no hernia and that he could find no objective symptoms which would explain pain'in the inguinal area.
Dr. J. Willard Dowell examined the plaintiff on two occasions and the record contains two letters which he wrote concerning the plaintiff’s condition. The first of these, written October 14, 1954, concluded as follows:
“This patient • shows little objective evidence of disability at this time. The only,positive findings on physical examination" were slight difference in leg lengths ' wnich were present prior ’ to leg injury, of course, and some restriction of active extension of the spine. This limitation of extension may be voluntary on the part of the patient as no attempt was made to force through any range of motion. I was unable to find any evidence of a'herniated inter-vertebral' disc. I am not certain as to the cause óf the patient’s complaint in regard to the left testicle and left inguinal region, and made no attempt to evaluate, these complaints: .On the basis of my. examination, I do not feel that .the patient has any permanent disability, and feel that he is capable of returning to work at this time.”
The second letter of Dr. Dowell, written on April 8, 1955, concluded the following:
“I don’t feel that this 'patient has made any change since the last examination. It is possible that the transitional vertebra noted on X7ray with the accessory articulation is causing some back pain.
“However I'can find no objective evidence at this time of residual disability, and it is therefore my opinion that he has no permanent disability and is capable of returning to work at this time.”
We-find a report of Lallie Kemp Charity Hospital in the. record on -the plaintiff and it concludes as follows: - •
, “Diagnosis upon discharge; Epididy-mitis.”
In view of the above and foregoing; we are of the opinion that the plaintiff has 'definitely:-fáiled to prove-his case. We do not believe that the record -shows him to be disabled and even if it did, we do not think that the plaintiff has ■ shown any causal connection between his alleged disability and the alleged accident. It is *721 well established in the jurisprudence of this State that a plaintiff in a Compensation case is required to prove his cláim by a preponderance of the évidence and not by conclusions based upon speculation ■ or possibility. Furthermore, he must prove a causal connection between his alleged disability and his alleged accident. ' We believe the plaintiff has' failed to prove his case. It is with reluctance that wé'reverse the finding of fact by a trial judge but feel compelled to do so in this matter' for the reasons stated.
For the reasons assigned, the judgment appealed from is reversed and plaintiff’s suit dismissed.
Judgment reversed.