96 So.2d 368 (1957)
Virgil DAVIS, Plaintiff-Appellant,
v.
W. E. REYNOLDS, d/b/a Reynolds Lumber Company, Defendant-Appellee.
No. 8689.
Court of Appeal of Louisiana, Second Circuit.
June 28, 1957.
Rehearing Denied July 25, 1957.
Writ of Certiorari Denied October 8, 1957.
*369 Wood & Jackson, Leesville, for appellant.
Gordon B. Golsan, Jr., Mansfield, for appellee.
AYRES, Judge.
By this action plaintiff seeks to recover of his employer compensation as for total and permanent disability allegedly due on account of accidental injuries sustained on August 9, 1954, while performing services for the defendant in connection with his employment at defendant's sawmill located at Pleasant Hill, Sabine Parish, Louisiana. From a judgment of February 21, 1957 awarding plaintiff compensation at the rate of $23.40 per week for a period of twenty-six weeks, less compensation previously paid in the sum of $150, he has appealed. Defendant neither perfected an appeal nor answered plaintiff's appeal.
We are favored by a written opinion of the trial court, the material portion of which we quote as follows:
"Defendant denies that plaintiff received an accidental injury and, if so, that he had been fully paid all compensation due. In the alternative defendant alleges that plaintiff in no event is entitled to recover more than Nineteen and 50/100 ($19.50) Dollars per week.

*370 "In this case we are of the opinion that although plaintiff must have received a slight injury in some way while on the job August 9th, 1952, we do not believe it happened as plaintiff would have the Court believe. We were not impressed with the testimony of plaintiff and do not believe any such occurrence as he described took place. Were it not for the testimony of Mr. Elliott D. Cooper and Preston Johnson that plaintiff made complaint, during a stoppage period in the afternoon, we would reject his claim altogether.
"As to the extent and duration of the injury we are of the opinion that plaintiff had entirely and fully recovered at the time of trial. We observed that plaintiff had the appearance of being unusually agile and spry for a man of his age, and especially so if his vocation had been one of hard manual labor.
"Of the three medical experts who testified for defendant, Dr. Murdock (a doctor of plaintiff's choice) could find nothing wrong with him; Dr. Prothro, as a precautionary measure, referred plaintiff to Dr. Overdyke, an orthopedist, who after three examinations pronounced plaintiff recovered as of August 31st, 1954.
"As to the medical experts for plaintiff: It is our opinion that Drs. Briel, Stephens and Reid, basing their testimony on subjective symptoms, were prone to delve too deep into the realm of speculation to give their testimony much weight. Dr. John Rozier, witness for plaintiff, seemed to be the most practical of the four expert witnesses for plaintiff. His testimony was that an injury of which plaintiff complained usually lasted only about six months.
"Giving the plaintiff the benefit of every doubt as to his receiving an injury in the course and scope of his employment and, if injured, as to its duration, we are of the opinion that a judgment for compensation at the rate of pay alleged in his petition for a period of six months will fully compensate plaintiff."
Primarily for consideration on this appeal are the questions whether plaintiff sustained accidental injuries in the course and scope of his employment and, if so, the extent and duration of such disability. Secondarily, for consideration are the rate of compensation and the fixing of the attorney's fees. These matters will be considered in the order indicated.
As to the occurrence of the accident, the proof appears highly unsatisfactory. Plaintiff claims that while he was loading logs off a skidway onto a dolly car he was injured by a log striking his left hip, the severity of which was insufficient to produce any objective signs or symptoms of an accidental injury such as cuts, bruises or abrasions. No one witnessed the accident, although a number of fellow employees were in close proximity and were in position to have observed an accident should one have occurred. Nevertheless, the trial court very reluctantly concluded that plaintiff did, in some manner, sustain an accidental injury, which conclusion was based on plaintiff's complaints to two fellow employees during a cessation of operations during the afternoon of the alleged accident.
From a consideration of the record as a whole, we are not prepared to conclude there was manifest error in his Honor's finding of fact, and, even should we have reached a contrary conclusion, we would be unauthorized to alter the judgment in defendant's favor under his plea in brief and oral argument for a reversal of the judgment, inasmuch as he neither appealed nor answered plaintiff's appeal. Under such circumstances we are precluded from modifying the judgment in appellee's favor. Code of Practice Article 592. Ober v. Williams, 213 La. 568, 35 So.2d 219; Day v. Roberts, La.App., 55 So.2d 316. We, *371 therefore, accept as an established fact that plaintiff did sustain an accident in some manner.
A detailed discussion of the medical evidence appears unnecessary. A brief resume will suffice. It may be appropriate to say at the outset that the medical testimony is most conflicting as between the doctors testifying for defendant and those for the plaintiff. Furthermore, there is conflict between plaintiff's medical witnesses as to plaintiff's condition and the cause thereof. The diagnoses vary from bursitis to an injury to the sciatic nerve and a possible herniated intervertebral disc. It will be noted from the opinion of the trial judge that he refused to accept the evaluation of total disability as claimed by plaintiff and accepted the view of the experts whose testimony limited plaintiff's recovery to a period of time not exceeding six months.
The first medical attention given plaintiff was by Dr. H. M. Prothro, a surgeon and general practitioner of Pleasant Hill, Louisiana, on the day following the date of the alleged accident. According to his examination and observation there were no cuts, bruises or abrasions or other evidence of trauma; no complaints were noted except a suggestion of pain or tenderness on pressure to the crest of the ilium of the left side. There were no objective signs or symptoms of an injury. X-rays were negative. The doctor could find no cause for pain or, in fact, anything wrong with plaintiff except an indication of bursitis or rheumatism.
Dr. Prothro referred plaintiff to Dr. D. F. Overdyke, Jr., an orthopedist of Shreveport, Louisiana, who based his conclusions primarily on subjective complaints made by plaintiff and concluded that plaintiff was suffering with traumatic bursitis of the greater trochanter of the left femur. That the condition was of traumatic origin could not be established by any clinical findings. Dr. Overdyke examined plaintiff on three occasions during September, 1954, and on the last occasion, September 30, 1954, tenderness over the affected area was not nearly so marked and had considerably subsided, and the doctor pronounced plaintiff able to return to his employment.
Plaintiff was next examined by Dr. Lloyd H. Murdock, a general practitioner of Zwolle, Louisiana, who examined plaintiff at his own request on September 7, 1954. Dr. Murdock diagnosed plaintiff's condition as one of traumatic bursitis; that it was traumatic being based upon a history of the accident given to him by plaintiff. The doctor testified that the normal period or duration of recovery from a bursitis of the type of which he found plaintiff suffering was from three to five weeks from the date of the injury and that at the time of the trial plaintiff was fully recovered.
Plaintiff was examined, through the request of his attorneys, by Drs. George B. Briel, W. E. Reid and John Rozier, whose examinations were made several months after the alleged accident and just prior to the trial in the lower court. Dr. Briel's diagnosis was primarily and basically muscular weakness due to injury to the sciatic nerve, which type of weakness he shows to be very similar to weakness in poliomyelitis. He found no bursitis, which he says could have fully disappeared on the date of his examination. His findings indicated that plaintiff sustained a strong crushing blow which would evidently cause contusions and bruises, although not necessarily abrasions. His conclusion was that, if his diagnosis was correct, the duration of plaintiff's disability would be from six months to a year.
Dr. M. A. Stephens, a general practitioner residing in Hornbeck, Louisiana, was of the opinion that plaintiff had ruptured an intervertebral disc which produced pressure on the nerve of the lumbosacral area, and particularly the sciatic nerve. This he attributed as the cause of plaintiff's pain, tenderness and deadening of sensibility to the lower left extremity and also the sluggishness of his muscles. The doctor's examination was on April 4, 1955, and *372 at that time his opinion was that plaintiff was totally incapacitated from the performance of work of the kind and character usually performed by him. No other expert agreed with the doctor's diagnosis.
Dr. W. E. Reid of DeRidder, Louisiana, who engages in the practice of surgery and general medicine, who examined plaintiff on several occasions beginning December 28, 1954 through January 20, 1955, found from x-ray examinations a large arthritic spur on the third lumbar vertebrae, left side, and bursitis of the left ilium, which, in his opinion, had existed over a long period of time, but which also, he says, could have been aggravated considerably by the accident. The doctor was of the opinion that plaintiff was disabled and that the period of disability was indefinite and would depend upon his response to adequate treatment.
Dr. John Rozier, a physician of DeRidder, Louisiana, on examination, found plaintiff complaining of pain in his left hip. He found no evidence of muscular weakness but concluded that plaintiff had a bursitis of the hip, which he defined as an inflammatory or degenerative reaction in a structure known as a sac found around most joints protecting the moving parts of the bone from the adjacent ligaments, tendons and muscles and which, in his opinion, was either infectious or traumatic in origin. His diagnosis was generally predicated, as was that of several of the other experts, on subjective complaints made by plaintiff rather than upon any clinical findings of his examination. His opinion was that plaintiff was disabled and would be so for an indefinite period, but stated that with proper treatment recovery from bursitis would be complete within a period of six months after an injury.
Recapitulating the findings of these doctors we find their diagnoses as follows: Bursitis: Drs. Prothro, Overdyke, Murdock, Reid and Rozier. Intervertebral Disc: Dr. Stephens. Sciatic Nerve Injury: Dr. Briel. These diagnoses were practically all predicated upon subjective symptoms with little or no objective findings.
It is noted that there is some degree of unanimity of the findings of the doctors as to the effects of the aliments they diagnosed. Drs. Prothro, Overdyke and Murdock all diagnosed bursitis, treated for that ailment and indicated full recovery. To the contrary, those experts testifying on behalf of the plaintiff each found plaintiff suffering total disability but varied in their diagnoses of the causes for such disability. Dr. Stephens' diagnosis was a disc injury with possibility of a nerve involvement. Drs. Reid and Rozier, bursitis with a likely possibility of a nerve involvement. Dr. Briel, a muscular impairment resulting from a possible injury to the sciatic nerve.
Applicable to the issues are the following well settled rules of Law:
1. The plaintiff in a workmen's compensation case bears the burden of proof and is required to establish his or her claim to a legal certainty by a reasonable preponderance of the evidence; establishment of a claim to the extent only of possibility or probability is not sufficient.
2. Conjecture and probability may not serve as a basis for a judgment in workmen's compensation cases.
The foregoing rules are so well established that citation of authorities seem unnecessary. However, some of the more recent cases enunciating these rules are: Green v. Heard Motor Co., Inc., 224 La. 1077, 1078, 71 So.2d 849; Hogan v. Stovall Drilling Co., La.App., 55 So.2d 284; Roberts v. M. S. Carroll Co., La.App., 68 So.2d 689; Driggers v. Coal Operators Cas. Co., La.App., 73 So.2d 602; Smith v. International Paper Co., La.App., 73 So.2d 652; Robbins v. Chicago Mill & Lbr. Co., La. App., 76 So.2d 635; Henderson v. New Amsterdam Cas. Co., La.App., 80 So.2d 438; Kraemer v. Jahncke Services, Inc., La.App., 83 So.2d 916; Braziel v. Pope, La.App., 86 So.2d 717; Fourchea v. Maloney *373 Trucking and Storage, Inc., La.App., 88 So.2d 82.
The plaintiff has failed to establish his claim for compensation as for total and permanent disability or for a period of time exceeding six months allowed by the trial court, by a reasonable preponderance of evidence and to such a degree of legal certainty as would constitute the basis for further award in his favor. To the contrary, by a reasonable preponderance of the evidence, it is established that the duration of plaintiff's disability did not extend beyond a period of six months.
The basis of plaintiff's compensation is that of a six work day week. Such we feel is the now well established jurisprudence in this state. Jarrell v. Travelers Ins. Co., 218 La. 531, 50 So.2d 22; Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399. Therefore, the rate is $23.40 per week as awarded by the trial court.
Plaintiff also urges that the expert witness fee of Dr. Briel as an orthopedic surgeon be increased from $35 to $50. LSA-R.S. 13:3666 provides that in fixing the compensation of expert witnesses the court shall take into consideration "the value of the time employed and the degree of learning or skill required." A specialist ordinarily requires a greater degree of skill or learning as to his specialty than does a general practitioner. The fixing of expert witness fees is largely within the discretion of the trial court, under whose watchful eye the testimony is received. It is noted in this case that all the expert witnesses testified by deposition, other than Dr. Murdock, and that the fees of those testifying by deposition was fixed at $35 each while that of Dr. Murdock, who testified in open court, at $50. There also appeared as one of these experts Dr. D. F. Overdyke, Jr., another orthopedist, whose fee was fixed, as stated, at $35. Under the circumstances we do not feel that the trial court has abused its discretion in the fixing of these fees, particularly to such an extent that we could single out one specialist and increase his fee over that of another we deem to have been adequately fixed.
Plaintiff also complains that through clerical omission his attorney's fee was inadvertently undetermined. Therefore, the judgment should be amended so as to fix such fee.
For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed be amended by the fixing and allowance of plaintiff's attorney fees in the sum of 20% of the amount which may be collected or recovered under said judgment, not, however, to exceed $1,000 and that as thus amended the judgment is affirmed, the appellant to pay the costs of the appeal and all other costs by the appellee.
Amended and affirmed.