ELLIS, Judge.
Plaintiff has appealed from a judgment awarding him workmen’s compensation at the rate of $35.00 per week commencing Jan. 8, 1957 and ending June 4, 1957 with interest at the rate of 5% on each delinquent payment from due date until paid and further for the additional sum of $182.-60 with interest from judicial demand and costs including the fees of the medical experts.
Plaintiff contends that the lower .court should have awarded him judgment for total and permanent disability subject to a credit for compensation previously paid, as a result of an accident suffered by him on October 9,. 1956.
The defendant also appealed from the judgment of the lower court because he contends that plaintiff had fully recovered from any disability prior to January 8th, 1957, the date to which plaintiff was paid workmen’s compensation. Defendant contends that the medical unqualifiedly showed *189 that the plaintiff had no disability subsequent to Nov. 20th, 1956, or in the alternative, no disability subsequent to January 7, 1957 and that any medical testimony of disability beyond Nov. 20, 1956 or in the alternative beyond January 7, 1957, is merely speculative and conjectural and based solely on plaintiff’s subjective complaints.
On October 9th, 1956 plaintiff and a fellow employee were carrying a three inch by eight inch by fourteen foot board when plaintiff stumbled or slipped resulting in the board falling across his back. The back part of the board struck him, however it left no marks, bruises or abrasions. Plaintiff reported the accident to his foreman and continued to do lighter work the rest of the day with pain. The following day, Oct. 10, 1956, plaintiff was sent by his employer to see Dr. J. J. Stagg of Eunice, Louisiana. Dr. Stagg stated that plaintiff was complaining of pain in his back and that he gave him an examination and found that he had tenderness over the lower back or in the lumbar region and he had limitation of forward bending. He gave him diathermy treatment and a sacro-iliac belt and in addition, had an X-ray made of his low back which he found negative. His tentative diagnosis was contusion of the back. The contusion or bruise was to the muscle of the lower back, which he stated were the paravertebral muscles. Dr. Stagg treated plaintiff with heat treatments and during the month of November plaintiff was still complaining of pain and disability. Dr. Stagg could find no reason for plaintiff’s pain and sent him to Dr. Meule-man for an examination, which the latter made on November 20th, 1956. Although Dr. Stagg states that he continued to treat the plaintiff until January 18th, 1957, he is positive in his testimony that he could find no reason for plaintiff’s complaints and was fortified in this opinion by Dr. Meule-man’s report of Nov. 20, 1956 to him that in his opinion the plaintiff had no disability. Dr. Stagg stated that after receiving Dr. Meuleman’s report he continued treatments which consisted of heat application until January 18th, 1957 because Dr. Meuleman had requested that “plaintiff be considered disabled for about another thirty days because he wanted to recheck some X-ray findings.” On the 16th day of January, 1957 Dr. Stagg received a copy of Dr. Meuleman’s report as a result of a visit by the plaintiff on January 2, 1957 in which Dr. Meuleman confirmed his prior opinion as a result of his examination on Nov. 20, 1956 that plaintiff was not disabled and reported to Dr. Stagg on Jan. 16 to that effect. Dr. Stagg, thereupon, on Jan. 18th was of the opinion that the plaintiff had no disability and could return to hard work and discharged him.
Dr. Meuleman gave the plaintiff a thorough examination on November 20th, 1956, and found no muscle spasm or objective symptoms for plaintiff’s complaint of pain. As a result of the test which he described in detail in his testimony he concluded that the plaintiff was not disabled. This conclusion was also based upon X-rays which were taken after Dr. Meuleman’s direction. The interpretation of these X-rays given by Dr. Romagosa, who was referred to by Dr. Meuleman as one of the ranking radiologists, in which Dr. Meule-man thoroughly agreed, were as follows:
“There are bilateral defects in the par-sinarticularis of L-5; this is associated with a minor degree of forward slipping of !L-5 on S-l. There is an irregular radio-lucent line which is roughly vertical in direction crossing the inferior articular process on L-4 on the left. This line can be seen in the same location on three different projections. It is highly suggestive of a possible fracture of the inferior articular process of L-4.”
As a result of the suggestion of a possible fracture of the inferior articular process of L-4, Dr. Meuleman recommended that the plaintiff be considered disabled for an additional thirty days, although he doubted seriously that there was such a fracture. On January 2nd, 1957 additional X-rays were made. An interpretation of the Janu *190 ary X-rays resulted in an opinion by this doctor that instead of a fracture it was an additional congenital abnormality. This doctor stated that as a result of his examinations and interpretation of X-rays it was his opinion that the plaintiff had recovered by Nov. 20th, 1956 from his injury of October 9th, 1956 and was again capable of enjoying gainful employment. He described the forward slipping of the body of L-5 on S-l as Spondylolisthesis, which he felt had pre-dated his accident of Oct. 9th, 1956, and that on Nov. 20th, 1956 plaintiff’s condition was the same as it was before his accident. It is shown that plaintiff had a congenital condition of the back known as spondylolisis, which is termed spondylo-listhesis where there is a slippage as described by Dr. Meuleman, supra. Dr. Meuleman and the other doctors who examined plaintiff found his condition to be Grade I, which is minimum.
Dr. Briel, an orthopedic specialist and a witness for the plaintiff stated that he had examined the latter on Feb. 19, 1957, at which time plaintiff was still complaining of pain in the region of the lumbo-sacral joint. He also had X-rays made and as a result of the X-rays and the examination he diagnosed a first degree spondylo-listhesis to be present with anterior slipping of the bodies No. 5 on Sacro-1, for a distance of about 3 millimeters, bilateral defects in the parsinterarticularis between Lumbar-5 and Sacro-1, with no evidence of any fracture or dislocation. He diagnosed the man’s condition from his history and examination as having suffered either a contusion of the tissue in his lower back or a ligamentous strain at the lumbar sacral region of his back. At the time of his examination he still showed a mild residual of his injury as demonstrated by the flattening of the lordotic curve and spasm in the right paravertebral muscles and subjective findings of pain and tenderness. He did not feel that the plaintiff could return to heavy work at that time. He re-examined plaintiff on June 4, 1957, at which time he was still complaining of pain and told the doctor that he had tried to do work in his garden but was unable to prolong it for more than three hours without severe pain in his back. As a result of this examination Dr. Briel stated that he could not find any objective evidence at that time of his original injury. This doctor also stated that as far as the defects in the plaintiff’s back were concerned they were not due to the trauma but were congenital, but as to the slippage he could not say it was due to trauma or whether that was present before or after the accident. However, he stated very positively that he did not believe the accident caused any of the slipping as to the type of injury and pain which he had “was not sufficient, I felt, that would be commensurate of sudden slippage of one vertebra over another.” In addition it was his best opinion that the slippage predated the accident but he could not say absolutely that none took place at the time of the accident.
However, on redirect examination Dr. Briel reiterated that he was of the opinion that there was no slipping but that “Taking for granted that the man still has pain, of course, which we cannot physically demonstrate, the only explanation that I can give is that his accident has set up an inflammatory reaction of that particular area which is still existing although all objective evidence of injury has disappeared.”
Plaintiff was also examined on July 2, 1957 by Dr. Norman P. Morin an orthopedic specialist, who found the same congenital defect in the parsinterarticularis and a first degree spondylolisthesis involving L-5, S-l. The clinical examination revealed no muscle spasm or any other objective evidence to support plaintiff’s complaint of pain. X-rays taken in connection with this examination showed no fracture or dislocation, although they did reveal the condition above stated. It was Dr. Morin’s opinion that the slippage occurred prior to Oct. 9, 1956, and that no additional slipping occurred at the time of the accident. He was of the opinion that on July 2, 1957, *191 plaintiff had no disability, that he was able to return to the same type of work that he was doing prior to the accident, and that he could perform the work without pain.
Plaintiff offered in addition lay testimony to the effect that he had worked for the last fifteen years without any pain in his back, was a good worker. The medical testimony, however, is clear in the final analysis and the doctors do not disagree, that as found by the district judge as of June 4th, 1957, the plaintiff was no longer disabled. In fact the medical testimony is very strong that plaintiff was not disabled subsequent to January 7th, 1957, however, the lower court in fixing the date took the testimony of Dr. Briel, who was plaintiff’s witness, as of June 4th, 1957, and we cannot say that the acceptance of this date was manifestly erroneous.
We are in accord with the conclusion reached by the lower court as stated in his written reasons for judgment and we quote:
“It is apparent from the testimony of these medical experts that plaintiff has a congenital defect in his back known as spondylolisthesis, with a slipping of L-5 on S-l of a little more than two millimeters. I am convinced that this defect existed prior to October 9, 1956, and that little if any additional slipping was caused by the trauma which plaintiff sustained on that date. I am also convinced, however, that as a result of this accident plaintiff sustained a contusion of the muscles and tissues of the lower hack or a ligamentous strain in the lumbosacral region, which injury initiated an inflammatory reaction in the lower back area causing pain. There was still some objective signs of this injury when plaintiff was examined by Dr. Briel on February 19, 1957, but these signs disappeared by the time plaintiff was again examined on June 4, 1957. Clinical and X-ray examinations made since that time indicate that plaintiff is no longer disabled and that his complaints of pain are not justified.
“The doctor who originally treated plaintiff arrived at the conclusion that he was no longer disabled. Of the three orthopedic surgeons who examined him, two also concluded that he had fully recovered from the injury and was not disabled, Dr. Briel being the only such expert who felt that plaintiff still has some disability. I interpret Dr. Briel’s testimony, however, to be substantially to the effect that although there is no longer any objective evidence of disability, it is possible for plaintiff to have an inflammatory condition in his back which could cause the pain of which he complains. It appears to me that his conclusion that plaintiff was disabled on and after June 4, 1957, is based on conjecture, because in order to arrive at such a conclusion it is necessary to assume that plaintiff has the degree of pain of which he complains, and that he has an inflammatory condition in the tissues or muscles of his back, neither of which facts can be established.
“The law is clear that the plaintiff in a compensation case bears the burden of proving his case with reasonable certainty by a preponderance of the evidence, and that conjecture and probability may not serve as a basis for judgment. Edwards v. Shreveport Creosoting Company, Inc., 207 La. 699, 21 So.2d 878; Braziel v. Pope, La.App., 86 So.2d 717; Fourchea v. Maloney Trucking & Storage, Inc., La.App., 88 So.2d 82; and Davis v. Reynolds, La.App., 96 So.2d 368.
“After considering all of the evidence I conclude that plaintiff has established by a preponderance of the evidence that as a result of the accident which occurred on October 9, 1956, he was disabled from performing work of a reasonable character from the date of that accident until June 4, 1957, but that he has failed to establish that he was disabled from and after the last mentioned date. Plaintiff, therefore, is entitled to compensation payments during the period of his disability.”
Counsel for defendant in oral argument and brief contends that the conclusions *192 reached by the lower court, which we have quoted, and in which we agree, should not be accepted under the facts in this case. He argues that the plaintiff had never complained of his back prior to the accident, had an excellent work record, and that subsequent thereto he was in pain and particularly whenever he attempted to do any kind of work. For example that after two or three hours in his garden he would have to cease because of the pain. Further that it had not been shown nor did anyone suggest that he was a malingerer and therefore, Dr. Briel’s explanation, taking for granted that the plaintiff was suffering the pain which he described, that the accident had set up an inflammatory condition in plaintiff’s back, caused by a slippage even though minimal, due to the congenital defect in his back. Defendant’s contention may best be summed up by the statement read to Dr. Meuleman by counsel and with which he agreed generally and we quote:
“Spondylolisis is a non uncommon pre-existing and dormant condition in personal injury litigants. Following injury, and asymptomatic or dormant spondylosis may first become manifest. In this way, non-disabling simple spondylolisis may be converted to a marked spondylolisthesis by an accident,” and that once the spondylo-listhesis develops, that is, the slippage, it may become asymptomatic and upon strain or exercise, may become symptomatic. Defendant contends that is the case herein with plaintiff. That the accident caused slippage which set up an inflammation and that plaintiff is disabled totally because any work or strain or exercise renders his condition symptomatic. While we realize the force of defendant’s argument, we, as the district judge, are bound by the testimony of the medical experts, all of whom were of the opinion that plaintiff’s spondylolis-thesis, or slippage, pre-dated the accident. The only testimony upon which the defendant could grasp was that of Dr. Briel as to an inflammatory condition having been set up by the accident which was only an explanation that he offered for plaintiff’s complaints if he assumed that they existed. His honest opinion was not in accord with his explanation. There is no other scintilla of evidence by these doctors to substantiate counsel for defendant’s contention. Were we to accept the defendant’s contention under the facts in this case, we would be doing that which settled jurisprudence holds must not be done, deciding upon conjecture and probability as a basis for judgment. Plaintiff bears the burden of proving his case with reasonable certainty by a preponderance of the evidence. Edwards v. Shreveport Creosoting Co., Inc., supra; Braziel v. Pople, supra; Fourchea v. Maloney Trucking & Storage, Inc., supra; Davis v. Reynolds, supra.
For the above and foregoing reasons the judgment of the District Court is affirmed.
Affirmed.