LOTTINGER, Judge.
This is a workmen’s compensation proceeding in which the plaintiff seeks to recover for total permanent disability. It is alleged that on September 1, 1949, the plaintiff, while working in defendant’s sawmill in the town of Livingston, Louisiana, sustained an accident resulting in a rupture and that although he was operated on, the operation was not a success and that he has consequently been incapacitated to do the work he was engaged in at the time of the accident.
The defendant first filed an exception of prematurity, based on lack of notice and request for compensation. After this exception had been partially tried it was referred by the trial judge to the merits. The defendant then answered admitting the employment, the hazardous nature of defendant’s business and the plaintiff’s wages, but denying the occurrence of an accident and the plaintiff’s disability.
After trial on the merits the lower court rendered a written opinion in which he overruled the exception of prematurity and found the plaintiff to have suffered an accident which resulted in total permanent disability. Judgment was rendered, awarding the plaintiff $30 per week from September 1, 1949, to June 8, 1951, or a period of 92 weeks, amounting to the lump sum of $2760, plus interest at the rate of five per centum on each sum of $30 from the due date of each and every such amount, plus the sum of $107, for medical expenses, and subject to a credit of $195. Judgment was rendered further granting the sum of $30 per week with interest for a period not to exceed 308 weeks, beginning June 9, 1951. The defendant asked for and was granted a suspensive and devolutive appeal. The first surety on the suspensive appeal bond was found insufficient, whereupon an additional surety was furnished. The two sureties were held to be sufficient by the lower court and the case is now before us on a suspensive appeal.'
The case on its merits presents two questions of fact, namely, (1) was the plaintiff involved in an accident and, (2) if so, did he suffer such an injury as would entitle him to total permanent disability benefits under our workmen’s compensation statute. The exception of prematurity raises the additional question of whether the defendant was notified of the accident and demand made upon him for compensation.
Taking these points in their logical order, we first address ourselves to the question of whether or not the proper notice and demand were given. The requirement of *343 notice is found in LSA-R.S. 23:1291, which provides:
“No proceeding under this Chapter for compensation shall be maintained unless notice of the injury has been given to the employer within six months after the date of the injury or death. This notice may be given or made by any person claiming to be entitled to compensation, or by any one in his behalf.”
The above provision is modified to a great extent by another section of the act, LSA-R.S. 23:1295, which provides:
“ * * * Want of notice or delay in giving notice shall not be a bar to proceedings under this Chapter if it is shown that the employer, or his agent or representative, had knowledge of the accident, or that the employer has not been prejudiced by such delay or want of notice.”
Taking the testimony as a whole, we find that the trial judge was correct in finding that notice had been given. The testimony of the plaintiff is that on the morning following the accident he notified the foreman, Mr. Miller, who told him to speak to the superintendent. The plaintiff testified further that he spoke to Mr. Williams, the superintendent, who advised him to go to the hospital. Mr. Williams denied that the plaintiff informed him of an accident and stated that he had merely asked for a leave to go to Charity Hospital to be operated on. This same witness testified to having “loaned” the plaintiff the sum of $15 or $20 every two weeks on pay day, totalling the sum of $195, while the latter was in the hospital, and that he had never asked that he be repaid. In addition to the foregoing the plaintiff testified that he telephoned Mr. Henry Raziano, the defendant, personally, collect at his 'home office in Kenner, Louisiana, and further that he stopped at his office while on his way to. the hospital and again told him of the accident. None of this was specifically denied by the defendant himself and we therefore feel that the trial judge’s finding of fact insofar as this is concerned should not be disturbed.
Insofar as a claim for compensation is concerned, the first demand was apparently made on July 31, 1950, by letter addressed to the defendant by plaintiff’s attorney. The defendant contends first that the petition fails to allege demand having been made, but concedes that this is not necessarily fatal under Clark v. Alexandria Cooperage & Lumber Co., 157 La. 135, 102 So. 96. He seems to rely mainly, however, on the case of Brandon v. W. Horace Williams Co., La.App., 22 So.2d 753. A reading of the cited case, however, shows that it has no application here, because here there was a demand made by virtue of the letter by plaintiff’s attorney whereas in the Brandon case the plaintiff admitted that he had never made any demand whatsoever for compensation.
The defendant complains also of the trial judge’s refusal to admit testimony relative to defendant’s instructions to employees regarding accident reports together with two accident reports of minor injuries sustained by the plaintiff previous to the accident in question. In view of the fact that we have found that notice was given the correctness of the trial judge’s ruling is of no consequence.
Coming now to the question of whether or not an accident occurred on September 1, 1949, as alleged, we once again find the record to be sufficient to uphold the trial judge’s finding. The plaintiff himself testified on this point as follows :
“Q. Would you tell the Court exactly how this accident happened and what you were doing at the time? A. On September 1, 1949, I stepped on a 6X6 and it turned.
“Q. Were you working for Mr. Raziano? A. Mr. Raziano, and I slipped and fell through my legs and my entrails fell out. Next morning I reported to Mr. Williams.”
The record shows further that at the time of the accident, which occurred at about 6 o’clock A. M., the plaintiff was alone, employed as a night watchman which required that he clean up the mill and fire the boiler.' In addition to this Gus T. Baham and Virgil Oliphant testified that they were at the mill after the accident and saw that the plaintiff had difficulty in *344 moving. They performed his duties and took him to the doctor on the next day. Also of importance is the testimony of a Mr. McDonald, called as a witness for the defendant. This man testified that while he did not know personally of the accident, that the plaintiff’s fellow workmen around the mill talked of his having gotten hurt. The most convincing testimony relative to the accident, however, is that of Dr. I. L. Rosen, who testified as follows :
“Q. Do you recall the accident and hernia he had on September 1, 1949? A.' Yes.
“Q. Did you treat him at the time for the hernia? A. For the acute injury and recommended surgery.”
This witness testified also that he had 'been the plaintiff’s family physician since 1947. He also testified further as follows:
“Q. Doctor, did you examine this man. with reference to the size of the ■hernia the date he came to your office on or about September 1st? A. Yes, it was difficult because he was very tender.
“Q. What was the size of the hernia? A. It - was quite marked— he was too .tender. I didn’t try to estimate the size because it hurt him.
“Q. Was his person bruised? A. Yes.
“Q. Where? A. In the scrotum and left and right thighs. He had some ecchymosis — blue discoloration of a recent injury.”
As stated previously, we think the record ample to support the finding by the trial judge that the accident occurred on September' 1, 1949, as alleged. The only remaining question is as to the plaintiff’s disability, if any.
Two doctors testified as to the plaintiff’s condition. One of them, Dr. Glen T. Scott, Jr., testified that the plaintiff’s general condition was “terrible”, and that he had heart disease and evidence of other unrelated disease. He stated that he had examined the plaintiff only one time, on March 27, 1951; and then only in the “office sense”. He found a limitation in the movement of his right leg with no evident external reason for same. In his opinion the hernia itself was cured, and that the limitation of motion in the right leg was not sufficient of itself to prevent the plaintiff’s doing physical labor. •
In contrast to the testimony of Dr. Scott we have that of Dr. Rosen, who testified as follows:
“Q. Would you say you are well familiar with the case history and the injury? A. I believe so.
“Q. Do you know the type of employment that Mr. Baham had prior to the injury? A. Not exactly. I knew he was working at the mill but' not the specific position.
“Q. Was he physically able to do manual 'labor? A. Yes.
“Q. Prior to the accident? A. Yes.
“Q. What was your diagnosis at the time of the accident? A. My diagnosis was that he had incurred a right inguinal hernia, but after surgery had been done and he was still disabled to a great extent, I began to question whether that was the whole diagnosis and I discussed the case with a bone orthopedist man and we just can’t figure out the specific diagnosis because the hernia has been repaired and is sound.
“Q. Would you tell us what is your opinion, the trouble that Mr. Baham is suffering from now? A. I just got through saying we could not make any specific diagnosis. He had an inguinal hernia and had it repaired. In most cases those men are just as good and sometimes better to do physical labor after surgery. He has a flexion disability of the right hip which limits function to about 20% of normal. That is not due to the hernia, it is due to some other injury in the area of the right hip, yet there is no bone pathology.
“Q. Would you say he is disabled at this time? A. Yes.
“Q. He was not disabled prior to ■the accident? A. That’s right. ■
*345 “Q. Would you say that whatever his trouble is is a result of that accident? A. I don’t know. When he first came in, of course, he couldn’t flex the hip well. He couldn’t .do any labor because he was hurting from the hernia. It has been repaired and still he is disabled. Whether he had injury to the hip or whether the surgery had something to do with the flexion disability I don’t know. I discussed it with Dr. Aldrige and he said he couldn’t put his finger on it.
“Q. Is it common Dr. Rosen, or does it sometime happen that there will be other injury done at the same time of the hernia? A. Frequently, yes.
“Q. Of an internal nature which will also be disabling? A. I wouldn’t say internal. There might, of course, be a tearing of the ligaments that surround the cord. The injury was a straddle injury. He straddled a 6 X 6 and hurt himself in the pudendum. The injury to the hip is hard to explain.
• “Q. From what I heard of your testimony previously do I understand you correctly that the disability he has now is a result either of additional injury at the time of the accident, besides hernia, or the operation for the hernia? A. Yes. He might have had the hip injury or that muscle injury at the time of the accident or he might have had it incurred at the time of surgery. It is hard to say. After he had it repaired — the usual thing is he could do the same kind of work, but he can’t.
“Q. You know from your prior examinations that he had full use of his right hip prior to the accident? A. Yes.
“Q. Whatever the damage is is a result of the accident? A. Or the surgery.
“Q. Which is ¡because of the accident? A. Yes. Surgery is hard to figure out but I just can’t explain his. •flexion disability.
‘ Q. Is it your medical opinion that from your examination he is a disabled man? A. As far as his right hip is concerned.
“Q. That disability is a result either directly or indirectly from the accident that he incurred on September 1st. ? A. That is my impression.”
Throughout Dr. Rosen’s testimony, he kept repeating that he did not know and could not say that the present trouble and disability of the plaintiff was as a result of the accident. He stated further that the injury to the hip .was hard to explain; he could not say that the injury caused the hip disability or the surgery, he didn’t know. He stated that there was no other injury in addition to the hernia.
We can not agree with the trial judge’s finding that he was totally and permanently disabled as a result of the accident. As stated above, Dr. Scott did not think that the plaintiff’s present disability was due to the limitation of movement of the right leg. Neither do we find in Dr. Rosen’s testimony any positive evidence that his present condition is the result of the accident.
In Clark v. Southern Kraft Corp., La.App., 200 So. 489, the court held that:
“As a prerequisite to recovery of workmen’s compensation, an employee must prove an accident occurring within the scope and course of his employment and also show a causal connection between such accident and his injuries and disability.”
The above rule we think, is applicable here as we are of the opinion that the plaintiff has failed to prove to a legal certainty that his present condition has any causal connection either from the hernia or the fall. To the contrary, we find proof that his present condition is due to other causes — diseases.
We are of the opinion, however, that this claimant is entitled to the maximum compensation of $30 per week from September 1, 1949, to January 13, 1950, the date that he returned to work, together *346 with interest on said amounts. We fail to find any proof of medical expenses amounting to the sum of $107, as claimed ¡by the plaintiff and as provided in the judgment below and for said reason, said amount of $107, should be eliminated from the judgment.
For the reasons hereinabove assigned, the judgment of the lower court will be amended so as to exclude therefrom the allowance of $107, for medical expenses and the judgment to be further amended so as to only allow compensation to the plaintiff in the maximum rate of $30 per week from September 1, 1949, to January 13, 1950, together with interest at the rate of five per centum on each sum of $30, from the due date of each and every such amount, subject to a credit of $195, and as amended the judgment of the lower court is hereby affirmed at appellant’s cost.
Judgment amended and affirmed.