FRUGE, Judge ad hoc.
Plaintiff appeals from a judgment dismissing his claim in compensation for total and permanent disability. Plaintiff, Elvin A. Squyres, a resident of Caddo Parish, Louisiana, a rig builder by trade, was working for Marvin A. Squyres, a rig builder contractor of Brook Haven, Mississippi, tearing down a rig in the Parish of Terrebonne, Louisiana, on December 10, 1954... While so employed, plaintiff was ■ struck by a falling timber, resulting in .multiple injuries, all of which have healed .with little or no permanent disability, with the exception of his right elbow, and wrist. [Plaintiff alleges that he was taken to the Terrebonne Parish Hospital and placed Under the care of Dr. Allen Ellender. He maintains that a final diagnosis of injury to right arm and the resulting disability therefrom, that he had a fracture in the right elbow, which became infected and resulted in a spur growing of the olecranon, limiting use of the elbow joint. The arm cannot be straightened, nor can it be flexed to a full normal position.
Plaintiff appellant continued working at his usual job from January, 1955 through February 15, 1955. A few days thereafter when he properly assumed that he would not be re-employed by Marvin A. Squyres, he left Terrebonne Parish and went to his home in Shreveport. This departure was about February 23, 1955. He remained in Shreveport until March 5, 1955, when he sought employment as a rig builder with Roy Cobb. While working for Roy Cobb on March 28, 1955, doing his usual type of work, he sustained another injury to the same .arm, that is, a fracture of the radius approximately in the middle third of the forearm. Plaintiff was paid compensation by Cobb’s insurer until such time as he was dismissed as being able to return to work.
The trial court, in rejecting plaintiff’s claim, gave written reasons for judgment which we will take the liberty of quoting:
“This suit involves a Workmen’s Compensation claim.
“Elvin A. Squyres sued Marvin A. Squyres, his employer, Western Casualty & Surety Company, the compensation insurer of the employer, and Lofif-land Brothers, the general contractor for whom Squyres was sub-contracting.
“By consent decree, Loffiand Brothers has been dismissed from these proceedings.
“Plaintiff claims permanent and total disability as the result of an injury that he received on December 10, 1954, while tearing down a rig in his employment. He claims Thirty and no/100 ($30.00) Dollars per week for four hundred (400) weeks, One Thousand and no/100 ($1,000.00) Dollars medical, surgical, hospital, etc., and twelve per cent (12%) penalty, with a Five Hundred and no/100 ($500.00) Dollars attorney fee, and interest.
“In Paragraph VIII of his petition, plaintiff specifically complains of a disabling injury to the ‘head of the radius’, ‘right arm and wrist’, all resulting in his inability to ‘climb derricks or lift with his right arm’.
“It is conceded that compensation was paid at Thirty and no/100 ($30.00) Dollars per week from December 11, 1954, through January 21, 1955.
*839 “This suit was filed on February 15, 1956. There is a plea of prescription and an answer consisting of a general denial.
“However, it is conceded that plaintiff did have a disabling injury on the date of the accident, but that he completely and fully recovered from the effects of said accident and is able to' perform all duties of his former employment, and, therefore, entitled to no further compensation than that already paid.
“On the question of prescription, plaintiff pleads (see Paragraph XII of his petition) that when released from the hospital, he returned to his job, did light duty, and was paid his regular wage in lieu of compensation payments until February 23, 1955, thus making the filing of this suit timely.
“Suit was filed in Caddo Parish on this claim prior to the filing of this suit, but the Caddo Parish compensation claim was dismissed on a plea of jurisdiction.
“This Court believes that the question of prescription need not necessarily be passed upon because a conclusion has been reached on the merits in favor of the defendants.
“The plaintiff is suffering with a serious disability in his right arm. The Court does not entertain any doubt that the injury is disabling and that as a rig builder plaintiff is most seriously handicapped. He was injured on March 28, 1955, while employed as a rig builder by Roy Cobb. He suffered a fracture of the radius approximately in the middle third of the forearm of the same arm that he injured on December 10, 1954. In the opinion of the Court, the sole factual question is whether plaintiff’s right arm disability is a result of the accident of December 10, 1954, about which this case revolves, or whether the disability is the result of' the accident of March 28,; 1955.
“Plaintiff has a suit pending in Baton Rouge against Roy Cobb and his insurance carrier claiming total disability as a result of the injury of March 28, 1955.
“As already stated, this Court considers the plaintiff disabled and must: determine if this disability results 'from the accident complained of in the instant suit.
“Plaintiff, following the injury of-December 10, 1954, returned to work for Marvin A. Squyres on January 9,-1955. He worked until February ( 23, 1955. He felt that he was no longer wanted by his employer and he left to. go to North Louisiana. There is no evidence in this record that his services were unsatisfactory, but there is evidence that his working crew reported for a job without him. He admits that he was not a regularly, employed rig builder of Marvin Squyres. There is no explanation of his departure other than that made by plaintiff. He presumed that his services were no longer desired.
“When he left for North Louisiana shortly after February 23, 1955 ' (and we gather this from the fact thát he requested that his last check be forwarded to him in North Louisiana),' he remained there until March' 5, 1955, at which time he was employed by Roy Cobb to work as a rig builder; Fie continued to work as a rig buildef for Roy Cobb until his injury of March 28, 1955. ■'
“The record shows several weeks of regular, employment as a rig builder following the accident of December 10, 1954, though plaintiff would minimize this employment by claiming that' he was not really ‘working’. The Court can easily understand why Marvin Squyres might be willing to keep plain-; *840 tiff on the payroll at a regular wage while doing light work, but this would not apply to Roy Cobb. Evidently, plaintiff was capable of doing his regular work, or he would not have worked for Roy Cobb regularly as long as he did. Then, too, plaintiff must have had some feeling that it was the March 28, 1955, accident that disabled him because he filed a permanent and total disability claim based on that accident.
“The Court does not consider it decisive merely because a person files two permanent and total disability claims arising from two accidents. We do not consider it as evidence.
“There were several physicians who examined or treated plaintiff. Some of them testified in this case. Dr. S. W. Boyce, a general surgeon, Dr. G. A. Creel, ■ a radiologist, and Dr. C. S. Boone, plaintiff’s family physician, treated or examined him and testified. Dr. Caldwell, a bone specialist, and Dr. Gosslee, who actually treated plaintiff were not produced as witnesses. Dr. Roboloff examined plaintiff for defendants and testified. Dr. Boyce admits that he could not tell which accident caused the disabling injury, but he blamed the disabling injury on the first accident from what was told to him by the plaintiff. This testimony is found on page 72 of the depositions introduced as ‘P-17’. The testimony of Dr. Creel, the radiologist, does not, in the opinion of the Court, aid the plaintiff in proving that his disability is a result of the accident of December 10, 1954. Dr. Boone, recommended that he see an orthopedic specialist. At no time did plaintiff ever complain to Dr. Boone of his wrist.
“It so happens that the wrist and lower portion of the arm are the primary difficulties at this time.
“The Court is of the opinion that, on the testimony of the plaintiff’s physicians, the present disability to the right arm that prevents plaintiff from being gainfully employed as a rig builder is proved to have been the result of the accident of March 28, 1955. This conclusion from the medical testimony of the plaintiff coincides and conforms with the other undisputed facts of this case. Plaintiff actually was so employed following the accident of December 10, 1954, and has not been so employed following the accident of March 28, 1955.
“The testimony of Dr. H. R. Soboloff is clear and precise. It is logical and convincing. He pointed out by x-ray studies and comparisons of x-rays prior to and after March 28, 1955, that the radial head was moving free and clear with no im-pingements of the radial head itself, and he concludes (Tr. p. 31) that the radial head is free and has nothing to do with the present disability of the plaintiff. Specifically, this refers to the injttry of December 10, 1954.
“All of the disability which prevents plaintiff from being gainfully employed as a rig builder is, in the opinion of the Court, a result of the accident of March 28, 1955.
“Having found these to be the facts of this case, we must necessarily dismiss the demands of the plaintiff at his costs.”
There seems to be little doubt that this plaintiff is suffering from serious disability in his right arm. The trial judge seems to be of that opinion, and counsel for the defendants readily admit in their brief that plaintiff is disabled. The issue to be determined is whether this disability flows from the injury of December 10, 1954, or the injury of March 28, 1955. Plaintiff’s injury consists of the restricted range of motion in elbow losing the last twenty degrees of upper extension or ability to stretch his elbow completely out and ten degrees loss of flexion or ability to completely close his elbow as opposed the op *841 posite side. This finding is based on the testimony of Dr. Soboloff who testified on behalf of the insurance company in this case. This finding is concurred in by other physicians in this case.
Plaintiff produced three doctors on the trial of this suit. Dr. S. W. Boyce, a general surgeon; Dr. G. A. Creel, a radiologist, and Dr. C. S. Boone, family physician. Dr. Boyce stated that the injury to the elbow in his opinion, was all due to the original injury, and that the elbow is the most disabling thing he has got and that what keeps his pronation and supination, that is the turning the palm up and down what limits his action in the oil field where a man can’t afford to go in with a handicap. He stated in substance that he believed that the original injury was the cause of his disability with the exception of the broken bone in the arm which resulted from the second accident, but he further stated in the final analysis that a doctor who sees the patient at the time should know the patient better than anybody. He stated that he had seen the patient only once.
Dr. Creel, the radiologist, testified that in his opinion, the elbow injury was due to the original injury. Dr. C. S. Boone, the family physician, testified that plaintiff complained to him of his elbow hurting him badly, whereupon Dr. Boone recommended that he have an x-ray made of the elbow and advised him to see an orthopedic specialist. At the time Dr. Boone examined his elbow, pus was coming out and he dressed it and it was then that he advised him to see an orthopedic specialist as well as to have x-rays made. This was before the second accident.
The fourth and final doctor called in this case was Dr. Hymen R. Soboloff, called on behalf of defendants, he being the only orthopedic surgeon to examine plaintiff. According to Dr. Soboloff’s testimony and examination of the x-rays, Dr. Soboloff testified as follows (Tr. p. 29):
“X-ray No. 8 is labeled 5/25/55 and it is labeled Highland Clinic, Shreveport. This indicates that some displacement or angulation of the fragment has occurred and there is ulna displacement or displacement of the fracture toward the other hone in the forearm diminishing the space between the two bones in what we consider the crucial area of the forearm. In addition, at that date there is evidence that the fracture of the radius has not gone on to what we calí avascular necrosis or death of that other fracture. The fracture line is patent.”
In reference to the healing of the elbow, Dr. Soboloff testified (Tr. p. 31):
“No. 16 is dated 4/24/56. This is also by Dr. Teitelbaum. This is specifically of the elbow, indicates that the elbow has healed completely at this time. That there is a slight dip in the lateral margin of the outer margin of the radial head, but the over-all position is good and that there is about' the same amount of arthritis as described in the one of the same date labeled No. 15.”
After examining some sixteen X-rays, Dr. Soboloff was asked for a conclusion and testified as follows (Tr. p. 31):
“A. Comparing 16 and 17 all four planes of the elbow were taken and it reveals that the radial head is free to move around, no impingements of the radial head itself.
“Q. What is your conclusion after an examination of these X-rays, this series of X-rays? A. That the restrictions on the elbow as to his ability to straighten it out and completely close it is based on the arthritis that has piled up over the period of time from 1954 to the time I saw him in 1956, almost a year and a half, about eighteen months, something like that. The fracture in the radial head itself *842 lias healed. The position is good and it is free. There is just one little bit of a dip on the outer side which does not stop it from moving normally through its range of motion. The radius is healed in the proximal third of the radius where the fracture of the radius occurred and this has a tip toward the ulna indicating that the space that zve normally attempt to maintain has been narrowed and by the narrowing process has caused impingement, so when Mr. Squyres turns his hand up like this there is no impingement, but when he tries to go over to this radius that must slide \nq>rgund since the ulna stands still. That catches and because of the bony block he can’t come over this way.
“Q. , That is a result of that second ac'cident? A. The fracture of the radius -itself that Dr. Gosslee fixed.
“Q. And that prevents him from fotdting his arm? A. Palm down, yes.\
• “Q. The radial head has nothing to do with at all? A. The radial head is free.” (Emphasis by the court.)
It is significant that Dr. Gosslee, the physician who actually operated on plaintiff as a result of the second accident, and Dr. Caldwell, a bone specialist, who actually treated plaintiff, were not called by'plaintiff as witnesses,
The only hone specialist who testified in this case is Dr. Soboloff and he says the disability suffered by plaintiff here is due to his injury of March 28, 1955, and not that of December 10, 1954. In the absence of evidence on behalf of plaintiff to refute this clear, uncontradicted testimony, we are constrained to view the ruling of the trial court as correct. A careful study of the record convinces us that the District Court judgment on questions of fact is not manifestly erroneous and, therefore, will not be disturbed.
The jurisprudence of this State is clear that the plaintiff in a compensation case as in other cases bears the burden of proof and he is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. See the case of Roberts v. M. S. Carroll Co., La. App., 68 So.2d 689 and cases therein cited.
For the above and foregoing reasons, the judgment of the District Court is affirmed at plaintiff’s costs.
Affirmed.