LOTTINGER, Judge.
This matter is before us on an appeal taken by the plaintiff in a workmen’s compensation suit from a judgment of the court below which rejected his demands. The trial judge’s reasons for judgment are as follows:
“Alleging that he is totally permanently disabled by reason of accidental personal injuries received by him while in the employ of G. L. Paret and Sons, plaintiff instituted this action against The Travelers Indemnity Company, as the insurer of the employer, seeking an award of workmen’s compensation at the rate of $35 per week, for the duration of his disability, not to exceed 400 weeks, plus interest, medical expenses, costs and penalties.
“As the basis for his demands plaintiff alleges that his total permanent disability arose out of two accidents, one on August 7, 1958, and the other on August 27, 1958. In the first accident, according to his allegations ‘as he lifted a bale of hay he injured his back’, and in the second, he says he was lifting a heavy piece of machinery when he felt a sharp burning pain in his back. He further alleges that his injuries have been diagnosed as ‘disc syndrone, lower lumbar spine, with left sciatic manifestations’. Except as stated, the allegations of the petition do not particularize the injuries.
“Other than to admit the insurance carriage and that plaintiff was employed as a farm helper, defendant generally denied plaintiff’s allegations.
“The case was tried March 12, 1959, but was left open for the filing of certain medical depositions and until the filing of the transcript of the testimony. It was finally submitted March 23, 1959.
“The questions presented for decision are almost entirely factual, that is, whether plaintiff was involved in any accident, and if so, whether he received any disabling injuries as a result thereof, and if he did, the duration of such injuries.
“Plaintiff, in a compensation case, as in all other civil cases, bears the burden of proving his case by a fair preponderance of evidence. Squyres v. Western Casualty and Surety Co. [La. App.], 107 So.2d 837; Roberts v. M. S. Carroll Co. [La.App.], 68 So.2d 689; Robbins v. Chicago Mill & Lumber Co. [La.App.], 76 So.2d 635; Richardson v. Tunica Hardwood Co. [La.App.], 81 So.2d 470; Lacy v. Employers Mutual Liability Ins. Co. [La.App.], 86 So.2d 605. This means that, by such a preponderance of the evidence, he must prove that an accident occurred within the course and scope of his employment and show a causal *136 connection between such accident and his claimed injury and disability. Lasha v. Indemnity Ins. Co. [La.App.], 108 So.2d 675; Sims v. Brown Paper [Industries, La.App., 55 So.2d 311; Johnson v. Wyble, La.App.], 58 So.2d 213; Baham v. Raziano [La.App.], 58 So.2d 341; Braziel v. Pope [La.App.], 86 So.2d 717.
“Even though we recognize the well established rule that a compensation claimant may establish the occurrence of an accident, resulting in his injury, by his own testimony, alone, provided there is nothing which impeaches or discredits it and it is supported by the circumstances, (Fouchea v. Maloney Trucking & Storage Co., Inc. [La.App.], 108 So.[2d] 273), I am of the opinion, for reasons hereinafter pointed out, that the plaintiff in this case has fallen far short of discharging the burden resting upon him.
“Describing his first alleged ‘accident’, plaintiff testified (Tr. 3) ‘Well, we was loading hay, this was the last load of the evening, we was stacking pretty high in the barn, and I was picking a bale of hay up, all of a sudden my legs gave out on me, weak, you know, and I just sat down and told the boys to go ahead and finish unloading the hay that I couldn’t go any more. That was all right then.’ It will be noted that plaintiff there said nothing about any pain or injury or back trouble, and had to be prompted with the question ‘What part of your body was injured?’ when he answered ‘The lower part of my back, just below the belt line’. He said that he told ‘all the boys that was with me that evening. I told them I couldn’t go no more, that I was hurting in my back’. In his first description of what happened, he did not say that he ‘told the boys’ anything about his back hurting. He then proceeded to name those he told about his back hurting, namely (Tr. 4) Winston Lejeune, Herbert Myers, Jerry Gilbert, Lad Hoffpauir, Bobby Gene Lormand, Samuel Lor-mand and Mr. Ryan, the foreman, and said he told them ‘right when it happened’. Of those whom he said he told when he hurt his back the first time, he called to the stand Bobby Gene Lormand, Winston Lejeune, Jerry Gilbert, Lad Hoffpauir and Dempsey Ryan. None of these can be said to have supported plaintiff’s statement about having told them he had hurt his back while stacking hay, unless it be his nephew, Bobby Gene Lormand, 18 years old, a school boy, who worked only the one day, and construing his whole testimony I think it is apparent that the boy knew nothing of the particular incident plaintiff described. At page 25 of the transcript Bobby Gene, in answer to the question whether he recalled plaintiff receiving an injury that day said, ‘Well, that evening when we were stacking hay he said he hurt his back and had to sit down’. He then continued by connecting the incident with the time plaintiff had fixed, and then when asked ‘Did you hear him complain at any other time?’, he answered, ‘Well, that day he complained some’. On cross examination, at page 29, when asked ‘Just what did he say’, replied, ‘Well, he said he could work no more his back was hurting him too much’, not that he had hurt his back, and this is significant because plaintiff had complained for years about his back and his hemorrhoids, and when he went to Dr. Emmett, on August 28th, who operated on him for hemorrhoids, he told the doctor that he had fallen from a horse about a year before and hurt his back. (See Dr. Emmett’s deposition, Page 4.)
“Mr. Ryan denied that he was present when the hay was being stacked and denied that plaintiff had told him anything about being hurt while stacking hay. Winston Lejeune said while he worked on the job from June 8th *137 to August 29th, he lived at plaintiff’s home and was a friend of his. He said he heard plaintiff complain two or three times about a hack injury, but couldn’t say it was while they were stacking hay. He did not remember the incident described by plaintiff. Jerry Gilbert said he had never heard plaintiff complain about his back. He had heard him complain ever since he has known him, several years, about something, mostly about his piles. He did not recall the incident plaintiff described while stacking hay. Hoffpauir said (Tr. 38) that he wasn’t present at the time plaintiff claims to have hurt himself while stacking hay. He had heard plaintiff complain at times, but understood the trouble was his piles. Plaintiff offered no explanation of why he did not call Samuel Lormand, or Herbert Myers, who were also among the crowd whom he said he told when he hurt his back on August 7th.
“Plaintiff lost no time because of the alleged accident of August 7th, but continued to work until August 28th, when he says he hurt his back again, and during that approximately three weeks period, Mr. Ryan, the foreman, his own witness, said he made no complaint about having received any injury.
“Although by statutory direction and the jurisprudence, we are obliged to give liberal construction to a compensation claimant’s claim for compensation, we cannot render a judgment based on surmise, conjecture, or even probability. He is obliged to prove, with a fair preponderance of the evidence, that an accident occurred. My opinion is that plaintiff’s own testimony of the occurrence of August 7th is not supported, either by the testimony of the witnesses he called for that purpose, or by the surrounding circumstances. However, he claims' also that he is disabled by reason of injuries to his back which he sustained in an accident on March 27th, 1958. What áre the facts as to that alleged occurrence ?
“On that occasion, he says, he was lifting a corn cutter, (Tr. 5) a heavy piece of machinery. The reaction was the same (Tr. 6) as the first time, August 7th, ‘Just a little worse’. According to Mr. Buller, this accident happened about 4:30 P. M. and he told Hoffpauir and Ryan (Lad and Dempsey) ‘Let’s put that down, I can’t go any further’, and just about that time Locke Paret, Jr., one of his employers, drove up, but plaintiff said he didn’t tell Mr. Paret about having hurt his back, but worked the remainder of the day. The next day plaintiff said he and Mr. Ryan ‘took our dogs and we went to run them and when we come back that noon I couldn’t go any more’. It will be noted that up to this point plaintiff had not said anything about hurting his back in this episode, and if he had actually hurt his back, it seems strange that he said nothing about it to his employer, when he came on the scene and I doubt that a man who receives a severe injury to his back at 4:30 P. M. will spend much time ‘running his dog’ the next morning. Then, plaintiff decided (Tr. 7) that it was the next day after the first accident that he and Mr. Ryan went out to ‘run their dogs’. Obviously, he had to change his story in that respect, because it was the next morning, after the second accident, late in the afternoon, that he went to see the doctor, according to his testimony, and Dr. Emmett’s testimony was that he saw plaintiff on August 28th. Mr. Hoff-pauir, one of those whom plaintiff named as being among those whom he told about hurting his back late in the afternoon of August 27th, said he could not recall plaintiff making any complaint about hurting himself while they were working on the corn cutter.. The only time he heard him complain about hurting himself was when he *138 hurt his wrist one time, and about his piles. The following is quoted from this witness’s testimony (Tr. 39) concerning the time plaintiff left the job to see a doctor, on August 23th:
“ ‘Q. Did he tell you he was going to see a doctor? A. He said he was going to a doctor.
‘“Q. Did he tell you why ? A. No, he said he was suffering and that he had to see a doctor. He told me and Jerry * * *.
“ ‘Q. Did he mention a back ailment, or * * *? A. Well, no I thought it was mostly his hemorrhoids * * *.>
"Mr. Gilbert (Jerry) said he had heard Mr. Buller complain ever since he had known him, about something, but he couldn’t say as to his back, most of it being about his piles. Mr. Ryan said he had known plaintiff for several years and been closely associated with him. During the six or seven years he had known plaintiff, he had heard him complain lots of times about his back, and the complaints got worse in August, 1958. Plaintiff never said anything at any time about having been hurt on the job. Mr. Ryan describing the episode when the corn cutter blades had to be lifted, said that plaintiff adjusted the blades, and as they started the machine the blades clanked or made a noise. He told plaintiff they would have to be readjusted, (Tr. 50-51) and Mr. Buller told him ‘that from this on I could set the knives myself and he quit and walked off’ and went to the house and stayed all day. Said he was quitting. The next morning plaintiff returned and asked if he could finish out the pay period (the month) and was granted permission to do so. He worked that day and the next day he went to the hospital. On the morning of the day that plaintiff went to the hospital plaintiff told Mr. Ryan his back ‘was bothering him bad’. He had often told plaintiff, when he complained, he should see a doctor, and never thought any more about the complaint that morning, plaintiff having said nothing about having hurt himself, but he, Mr. Ryan, went to Lake Charles. After his return to the ranch Mr. Paret phoned him Mr. Buller was in the hospital because he had hurt his back. Mr. Pete Trahan who was present at the time of the blade setting episode, when plaintiff says he hurt his back on August 27th, and corroborated Mr. Ryan as to what happened. (Tr. 78.) This witness said during the time he has worked around Mr. Buller, he had never heard him say he had hurt his back, but when plaintiff has been at the Trahan place, he has seen plaintiff stoop down and have difficulty getting up and he has asked plaintiff what the trouble was and plaintiff said, ‘My back, I don’t know whether it is my hemorrhoids or what, but I shore paining’. (Tr. 79.) At page 17 of the transcript plaintiff categorically denied that his back had ever been injured before the injuries of which he here complains, but Dr. Emmett, his own witness, testified that plaintiff told him when he came to the doctor on August 28th, ‘At that time Mr. Buller stated that about a year prior to that time, August 28th, 1958, he fell from a horse and hurt his back’.
“I am of the very definite opinion that plaintiff completely failed to establish the occurrence of any sort of accident on or about August 27th, 1958, which resulted in any injuries of any character, from which he claims yet to be suffering.
“Having the views expressed, no purpose would be served in a discussion of the medical testimony concerning plaintiff’s present disability, if any. Suffice it to say that it appears to me that the preponderance of that testimony is to the effect that plaintiff’s *139 present complaints are all based upon subjective symptoms, entirely within plaintiff’s own control. Dr. Emmett operated on him on September 4, 1958, for hemorrhoids and plaintiff admitted that he has completely recovered from that condition, but says that he remains in constant pain in his lower back. He has been under no treatment since Dr. Emmett discharged him a few days after the operation, although he says he has not been able to work, other than do a little fishing to get money for the support of his children, and now lives in a camp on Calcasieu River.
“I observed him closely during the trial, when he several times arose from his seat, while he sat with his counsel at the counsel table, while he sat ■ in the witness chair, when he ascended and descended the long flight of steps at the entrance to the Courthouse. I could detect nothing that indicated any difficulty in his movements, nor were there any outward manifestations of pain, suffering or disability of any sort.
“For the reasons assigned plaintiff’s demands must be denied, and his suit dismissed.
“Each of the five medical experts testified by depositions. I think $35.00 would be a fair fee for each of them, which will be taxed as costs.
“Although the suit is prosecuted in forma pauperis, the cost will be assessed against plaintiff. Coulon v. [Anthony], Hamlin, Inc., 233 La. 798, 98 So.2d 193; Lasha v. Indemnity Ins. Co. [La.App.], 108 So.2d 675, 677.”
A careful study of the entire record not only fails to reveal any manifest error in the factual conclusions reached by our brother below, but, on the contrary, only serves to substantiate their correctness. Counsel for plaintiff urges before us that, as defendant paid compensation for a period of six weeks that this is “a tacit admission by the employer and insurer that the plaintiff was injured during the course of his employment.” The law, of course,, is to the contrary for LSA-R.S. 23:1204 specifically provides that:
“Neither the furnishing of medical services nor'payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this Chapter.”
The judgment appealed from is correct and is, therefore, affirmed.
Judgment affirmed.