BELÉN PHILLIPPI WIDOW OF ALFONZI, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; ELADIO DÁVILA VÁZQUEZ, Injured.

No. CI-63-23.     Decided June 25, 1964.

*César Montilla* and *Jorge Benítez Gautier* for petitioner. *Donald R. Dexter* for the Manager of the State Insurance Fund.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAÜ delivered the opinion of the Court.

On February 10, 1964, appellant filed a motion submitting this case on the pleadings and arguments set forth in the petition for review and on the memorandum of authorities attached thereto. On May 4 of that year the Manager of the State Insurance Fund filed a motion informing that he did not propose to submit a brief in the case, and that he relied on the pleadings and documents appearing in the record and

on the decisions of the Industrial Commission relative thereto. We have examined the lengthy record of this case, and the following is a summary in chronological order of the facts which seem pertinent.

On May 24, 1960, Eladio Dávila Vázquez, the injured laborer, filed in the Industrial Commission, through his daughter, Margarita Dávila, a claim for compensation for an accident sustained on the 9th of that month while performing a gardening job in appellant's residence.

On that same day of May 24, 1960, the Industrial Commission entered an order as follows: (1) it ordered the Manager of the State Insurance Fund to provide the necessary medical treatment to the laborer; (2) it ordered that an attachment be levied on the property of defendant employer; and (3) it granted to the latter a term of 10 days, counted as of the notice of such order, to file in writing any allegation which she may wish to make in the case, warning her that upon her failure to file some allegation within the said period the Commission would set the case for public hearing, after summoning the parties.

On June 6 of that year the employer, who is appellant herein, filed with the Industrial Commission an "Answer to the Claim for Compensation and to the Order of May 24, 1960" (dated June 3, 1960), alleging that the injured laborer was not and never had been a permanent or an occasional employee, or of any other kind, of appellant; that on May 9, 1960, the laborer went to appellant's residence asking if there was any work which he could do; that appellant and the laborer agreed that he would weed the garden and perform certain work therein for the agreed price of $6; that the work performed that day by the laborer in appellant's residence was of an accidental and casual nature and was not comprised within the business, industry, profession, or any occupation of appellant; that such accidental or casual work was being performed that day only for the agreed price of $6;

and that as a result of the foregoing allegations, the laborer was not covered by the provisions of the existing law; and requested the Commission to rule that there was no liability at all on the part of appellant to the laborer.

On August 11, 1960, the Manager of the State Insurance Fund declared the employer uninsured. A public hearing was held on November 28 of that year before Mr. Víctor Fernández Garzot, Associate Commissioner of the Industrial Commission. The employer appeared through her attorney, César Montilla, and the Manager of the Fund by his attorney, Carmen Ana Archeval. When the case was called, Mr. Montilla informed that Mrs. Alfonzi, appellant herein, was unable to appear personally because she was sick in the hospital, and offered a certificate to that effect from Dr. Pons. As to the substance of the case, what happened there was merely the following:

"MR. MONTILLA: It is accepted that there was an accident. The laborer is an accidental laborer and he did not work continuously for her, nor in connection with her business, but that day the employer engaged him to do some gardening work. Aside from that, what we accept is that a liquidation be made to this man and that the Fund pay him. We are not interested in causing prejudice to the man. The case should be liquidated conditioned on the right to challenge of this party.

"COMMISSIONER: We are going to order the liquidation of the case.

"MISS ARCHEVAL: He admits that he is not insured.

"MR. MONTILLA: Yes, that's the whole situation. I understand that the Fund is taking care of him and is treating him. We are interested in liquidating the case.

"COMMISSIONER: Very well. We are going to order the liquidation of the case and that the laborer be examined in order to determine whether he presents any incapacity." Tr. Ev. 2–3.

On November 28, 1960, the Commission entered an order, which was served the next day, which we shall copy verbatim in the belief that it is advisable for the purpose of discussing

further the position adopted by the Commission. That order reads:

"The above-entitled case was called for public hearing on November 28, 1960, at which the employer, Belén Phillippi widow of Alfonzi, appeared through her attorney, César A. Montilla; the laborer appeared personally; and the Manager of the State Insurance Fund through his attorney, Carmen Ana Archeval; and witness Orlando Cruz Monclova.

"When the case was called for public hearing, Mr. César A. Montilla forthwith informed the Industrial Commission that his client was confined in the Auxilio Mutuo, for which reason she could not appear at the hearing, and thereupon he filed a medical certificate signed by Dr. Juan A. Pons setting forth that that lady was confined for health reasons in Auxilio Mutuo.

"Mr. Montilla further stated that his client accepts that laborer Eladio Dávila Vázquez worked for her on May 9, 1960, and that it was in the course and as a result of the employment that he sustained the alleged accident; and that she requested that this case be liquidated by the Manager of the State Insurance Fund and that an opportunity be given her, after liquidating the case, to examine the expense items in order to tender payment.

"In view of the foregoing, the Industrial Commission DECIDES to refer the case to the Manager of the State Insurance Fund for liquidation. The employer shall have the right to examine the expense items, as provided by law."

Six days after above order of November 28, 1960, was served on the employer, namely, December 5 of that year, the employer filed with the Industrial Commission a "Motion to Clarify the Order of November 28, 1960," dated December 2, 1960 and signed by Mr. César Montilla.[1] In that motion of December 2, 1960, the employer alleges that she received the order of the Commission of November 28, 1960, copies verba-

---

[1] In the history of this case made by the Commission in its order of October 29, 1963, after making reference to its order of November 28, 1960 (erroneously referred to as of November 29), it goes on to say that the Manager entered an order on September 17, 1962, but it does not mention this motion of December 2, 1960, made by Mr. Montilla which bears the filing stamp of the Commission of December 5, 1960.

tim part of that order (which we have copied above), and also stated the following:

"3. That in the opinion of the undersigned attorney the foregoing statements do not conform strictly to the statements made by him at the hearing, in which he merely informed that in view of the employer's physical impossibility to appear at the hearing, and for the purpose of considering the possibilty and advisability of deciding this matter promptly, he admitted that the laborer worked for the employer on May 9, 1960, and that he sustained an accident on that day. He then moved to remand the case to the State Insurance Fund for liquidation, without prejudice to the alleged employer's right to challenge the items and to raise any other defenses which she may have.

"4. The undersigned attorney wishes to allege in particular that he never agreed beforehand to pay the claim which the State Insurance Fund may order, and that he never waived nor waives the defenses raised in the answer to the claim for compensation of June 3, 1960."

On October 5, 1961, a hearing was held before Raquel Nigaglioni, President of the Industrial Commission. There appeared the laborer, personally; the employer, personally and represented by Mr. Montilla; the Manager of the State Fund, represented by Mr. Germán Barreto accompanied by his medical expert, Dr. Abel de Juan, and the Medical Director of the Commission, Dr. Hiram Vázquez Milán. This hearing considered medical matters, and the dialogue was mostly between the President, the injured laborer, and the physicians. Mr. Montilla's only intervention at this hearing was to agree to a proposal of the President "to leave pending the question of disability until the radiographic studies are made," in view of Dr. Vázquez Milán's suggestion that it would be convenient "to study the case on the basis of radiographic studies," for the medico-technical reasons alleged by him.

The following day, October 6, 1961, the Industrial Commission entered an order referring the injured laborer to the

Medical Division of the State Fund for making the necessary radiographic studies, other examinations, and for proper treatment. The Commission also ordered that it be furnished with copies of the reports rendered in the case.

On December 26, 1961, the Commission entered an order in which it set forth part of the medical history of the case and concluded by stating the following:

"In view of the foregoing, this laborer is referred to the State Insurance Fund for treatment for the condition of the skin of the injured leg, and *we ratify* the order of this Commission of October 6, 1961, since the incapacity determined by the Manager's decision of 50 percent of the physiological functions of the left leg is fair and reasonable."[2]

On September 14, 1962, the Manager of the Fund entered a decision ordering the employer to pay compensation and the expenses incurred which are set out in detail, totalling $7,299.83. Notice of that decision was served on September 17. Four days later, namely, September 21, 1962, Mr. Montilla, on behalf of appellant, wrote a letter to the State Fund acknowledging receipt of the Manager's decision above mentioned, and also stating the following:

"It is said in that document that the Manager of the State Insurance Fund entered a decision on August 11, 1960, declaring the employer uninsured, and that the same is final.

"We hereby challenge such determination, and respectfully request that the record of this case be examined in order to ascertain that the decision of the State Insurance Fund declaring the employer uninsured IS NOT FINAL, since no determination has ever been made in that sense by the Industrial Commission of Puerto Rico to which appeal was taken from the preliminary determination of the Manager of the State Insurance Fund.

"For greater clarity, we refer specifically to our Motion for Liquidation filed with the State Insurance Fund, to the order

---

[2] The injured laborer is a person 80 years of age. He testified that he was weeding the garden when he stumbled and fell.

of the Industrial Commission of November 28, 1960, and to our Motion to Clarify the Order of November 28, 1960, which was filed with the Commission on December 2, 1960. All of these documents show clearly and categorically that the defense raised by the employer before the Industrial Commission of Puerto Rico in the sense that she was not liable at all to the worker under the Workmen's Accident Compensation Act, has not been decided one way or another by the Industrial Commission of Puerto Rico, and that as long as the same is not decided adversely to the employer, no decision against her to pay compensation, expenses incurred, and surcharges will lie.

"In view of the foregoing, we respectfully pray that the decision of September 14, 1962, be set aside and that the case be sent again to the Industrial Commission for determination at the proper time of whatever may be proper in law, after holding the corresponding hearings."

On October 24, 1963, the Chief of the Division of Uninsured Employers of the Fund wrote a letter to the secretary of the Industrial Commission in which he said:

"The above-entitled case was referred to us today by the Claims Division.

"Upon examination of the record we find a letter from Mr. Montilla, dated September 21, 1962, to which a record sheet of Mr. Gallart Mendía is attached. In that letter Mr. Montilla requested that the decision of the State Insurance Fund of September 14, 1962, be set aside and that the case be sent to the Industrial Commission, since the Commission had not passed upon the motions filed by the said attorney wherein the employer disclaimed liability and requested proper hearings.

"Since this case was not in my division, we were not able to comply with Mr. Montilla's request. Nor did we have knowledge that the case was on appeal before the Industrial Commission. In view of the foregoing, I am sending you the record for pertinent purposes."

Five days later, October 29, 1963, the Industrial Commission entered an order setting forth the history of the case and concluding as follows:.

"In view of the foregoing, this Industrial Commission HOLDS that the controversy on liability for the accident was settled by our order of November 29, 1960. It holds further that it considers the letter of September 21, 1962, from the employer's attorney as an appeal from the decision on liquidation of September 17, 1962, of the Manager of the State Insurance Fund, wherefore the secretary is hereby ordered to set the case for a public hearing concerning the liquidation."

On November 12, 1963, Mr. Jorge Benítez Gautier filed on behalf of appellant a motion for reconsideration, alleging that after the death of Mr. Montilla his office had received on November 7, 1963, the order of the Commission of October 29 of that year, at the bottom of which there was a certification of the secretary to the effect that notice thereof had been served on November 5, 1963. Mr. Benítez Gautier also alleged in his motion for reconsideration several points of those raised by Mr. Montilla in his aclaratory motion of December 2, 1960, to which we have made reference hereinabove, and that from that history it could be seen that the defense of employer's nonliability had never been waived. He moved the Commission to set aside its orders of November 28, 1960, and October 29, 1963, on the employer's liability, and to set a hearing to argue the matter.

■ On December 12, 1963, the Commission entered an order setting forth that on November 5, 1963, the Commission had held that the controversy on the employer's liability had been decided in its order of November 29, 1960; that it considered Mr. Montilla's letter of September 21, 1962, as an appeal from the decision on liquidation of the Manager of the Fund, and ordering that the case be set for a public hearing on liquidation. In that order of December 12, 1963, the Commission also admitted receipt of the motion for reconsideration made by Mr. Benítez Gautier, and says that after further study of the record of the case there is nothing to warrant a change of its previous decision, and it therefore

denied the motion for reconsideration and ratified that the case should be set for a public hearing on liquidation.

On December 26, 1963, the employer appealed to this Court from the order of the Commission of December 12, 1963, notice of which was served on the 13th of that month. On December 31, 1963, we granted to appellant until January 7, 1964, to file copies of the pleadings in this petition. On January 14, 1964, we ordered the Commission to remit to the Secretary of this Court the record of the case. The Commission ordered the transcripts of evidence of the public hearings held on November 28, 1960, and October 5, 1961, and on February 5, 1964; it sent up the record to this Court. As stated at the outset, in February of this year the appellant, and in May, the Manager of the Fund, informed that they were submitting the case without briefs.

Summing up, the Industrial Commission in its orders of October 29, 1963, November 5, 1963, and December 12, 1963, says that the controversy on whether there was liability on the part of appellant was decided by its order of November 29, 1960. We have copied verbatim that order hereinabove. A reading thereof is sufficient to conclude that the Commission's position is not correct. In the four paragraphs contained in the order of November 28, 1960, the Commission states (1) that the case was called for hearing and those who appeared; (2) that Mr. Montilla informed that defendant is unable to appear personally because she is hospitalized; (3) that Mr. Montilla admitted that the injured laborer worked for appellant on May 9, 1960, that he sustained an accident that day, that he requested that the case be liquidated by the Manager of the Fund, and for an opportunity to examine the expense items in order to tender payment; and (4) that the Commission decided to refer the case to the Manager of the Fund for liquidation, and that the employer would have the right to examine the expense items.

When was the allegation of the employer's nonliability, raised by defendant in her "Answer to the Claim for Compensation" of June 3, 1960, argued and where is the decision? Appellee employer has the right to something more on this point than a silence on November 28, 1960, a silence which was interpreted one year later by the Commission itself, October 29, 1963, in the sense that since nothing was said on that contention, the same was decided. In her "Answer to the Claim for Compensation" of June 3, 1960, the employer alleged that the work performed by the laborer on May 9 of that year was of an accidental and casual nature and that it was not comprised within the employer's business or profession. That contention calls for determination of a jurisdictional fact, since the Workmen's Accident Compensation Act itself provides in § 2, among other things, the following:

". . . Workmen and employees whose work is of an accidental or casual nature and is not included in the business, industry, profession, or occupation of their employer, and also such persons as work in their homes, are expresssly excepted." 11 L.P.R.A. § 2.

Far from waiving her contention, appellant insists on it. It must be recalled that at the hearing held November 28, 1960, Mr. Montilla admitted that there was an accident, but he expressly alleged that the laborer was an accidental one and did not work continuously for defendant nor in connection with her business. Mr. Montilla alleged that, irrespective of that, he was agreeable that the matter be liquidated in order not to prejudice the laborer, conditioned "on this party's right to challenge." In her Aclaratory Motion of December 2, 1960, appellant, through her attorney Mr. Montilla, reiterated that she admitted that the laborer worked for her on May 9, 1960, that he sustained an accident that day; and that she requested that the liquidation be made "without prejudice to the right of the alleged employer to challenge the items and to raise any other defenses which she may have." In

order to make the point clearer, she insisted, in paragraph 4 of the Aclaratory Motion, stating the following:

"The undersigned attorney wishes to allege in particular that he never agreed beforehand to pay the claim which the State Insurance Fund may order, and that he never waived nor waives the defenses raised in the answer to the claim for compensation of June 3, 1960."

We need not repeat what is so clearly expressed. From the record as a whole it appears that appellant's position was that the liquidation should be made so that, if the result thereof was a reasonable sum, she could pay the same and close the case, otherwise she would insist on her defenses. The Commission should have known that, since there is in the record a note from the President of that agency dated November 22, 1960, which reads as follows:

"The record of the Fund was sent to René Gómez with the messenger.

"Mr. César Montilla informed that his client's wish is to tender payment in the case, provided it is a reasonable amount. He was going to find out from the Fund.

"He will let you know. R. NIGAGLIONI, President."

■ The fact that an employer is willing to pay, or pays, to an injured laborer compensation which in his opinion is reasonable does not necessarily imply that he has waived his defenses and his rights under the law. *Cf. Nacirema Operating Co.* v. *O'Hearne*, 217 F. Supp. 332 (1963); *Oljenik* v. *O'Hearne*, 135 F. Supp. 496 (1955); *Roach* v. *Continental Casualty Co.*, 336 S.W.2d 811 (1960); *Buller* v. *Travelers Indemnity Co.*, 118 So.2d 134 (1960); *Cannon* v. *Michigan Mut. Liability Co.*, 66 So.2d 534 (1953); *Robin* v. *Brandin*, 45 So.2d 423 (1950).

■ As we stated in *South P.R. Sugar Co.* v. *Sugar Board; Mercado, Int.*, 82 P.R.R. 814, 831–32 (1961), it is a well-established rule of this Court to give great consideration and respect to the conclusions and interpretations of the special-

ized administrative agencies. However, that rule is not always in itself sufficient to define the relations that should exist between the administrators and judges in the difficult task of judicial review.[3] We realize that the former have the initial and primary responsibility of framing the rules, that they are delegates for said purposes of the Legislative Assembly with authority to regulate important economic activities under broad legislative mandates, that ordinarily they are selected for that task because of their known capacity and experience, that in their daily performance of such activities they develop a special sensibility which renders their diagnoses and remedies more trustworthy, and that the elementary principle of the division of work plus the respect to the legislative confidence conferred onto those administrators should mitigate the judicial anxiety of rendering the "best" solutions. But the judges also receive a legislative mandate of reviewing the administrative acts, which they must duly fulfill. They also have, in a far greater degree than the administrators, the opportunity of framing these controversies within a broader ambit where the controlling consideration must be the continuous maintenance of a strict system of law in the community.

In a case such as this, in which a jurisdictional question was specifically raised, the Commission was under the duty to hear appellant and to make an explicit determination on the matter. *South P.R. Sugar Co.* v. *Sugar Board, supra* at 832; *López* v. *Planning Board*, 80 P.R.R. 625, 644 (1958). Using the words of Mr. Justice Douglas in *Yonkers* v. *United States*, 320 U.S. 685, 692 (1944), we will say that we trust that it will be understood that we are not insisting here on meaningless formalities nor on unimportant requirements to burden the administrative process, but rather on an essential

---

[3] See, on this matter, the excellent discussion in 4 Davis, Administrative Law Treatise 189–270 (1958), and Davis, Administrative Law 868-928 (1951).

requirement for maintaining a system of law.[4] Of course, we are not passing judgment at all on the merits of the case.

For the reasons stated above, we are of the opinion that the Industrial Commission erred, and the case will be remanded to that Commission for decision of the question, after hearing the parties, of whether or not the employer was liable, and for other purposes in pursuance of law.

---

[4] See Velázquez Rivera, *"El Debido Procedimiento de Ley en el Sector Administrativo del Gobierno,"* 32 *Rev. C. Abo. P.R.* 445 (1962), and Cordero, *"El Alcance de la Revisión Judicial sobre las Decisiones Administrativas en Puerto Rico"* (mimeographed), *Col. Abo. P.R.* (1962).