CHRIS T. BARNETTE, Judge Pro Tem.
The plaintiff, an employee of the defendant’s insured, brought suit for workmen’s compensation claiming total permanent disability as the result of an accident alleged to have occurred in the course of employment on April 18, 1963. The trial court found as a fact that the plaintiff did not suffer an accident as alleged and denied recovery. This appeal is from that judgment rejecting plaintiff’s demands.
Plaintiff-appellant was employed by a transfer company as a truck driver. On April 18, 1963, while in the course of his employment, he was directed to load a barrel of linseed oil, described as a fifty-five gallon drum weighing approximately 485 pounds, for transportation from the warehouse. The barrel was stored with other barrels on an upper floor of the warehouse requiring that it be moved off the pallet, rolled along an aisle between stacks, of merchandise to an elevator by which, it was lowered to the loading dock.
The customary method for moving a. barrel, or drum, from an upright position’ is to tilt it until the weight is balanced on-the rim. In this position and properly-balanced it is easily rolled by a skilled person on the rim even though the total weight may be considerable.
Plaintiff was assisted by two helpers,, namely, Elliott Pinkney and Elijah Smith,, both of whom testified in the trial court. Pinkney was helping unload the truck at the warehouse and did not accompany the-plaintiff upstairs to get the barrel and therefore did not witness the alleged accident-sustained by him in attempting to move-it. He testified that upon plaintiff’s return to the truck to finish unloading it of' cases of tuna fish, plaintiff stooped over to. pick up a case weighing about thirty pounds, and immediately complained that he had hurt his back. The testimony of this witness does not shed any light on whether or-not plaintiff was hurt or sustained an accident while out of his presence.
The witness Elijah Smith was with the-plaintiff at the time the barrel was moved from the storage pallet down the aisle onto, the elevator and down to the loading dock. Smith testified that it was he who “broke-it off” the pallet and rolled it to the plaintiff and handed it to him “on edge.” At. this point the plaintiff made a statement, about being hurt, but that he, plaintiff, did' roll it to the elevator at which point Smith, took charge of it with a hand truck. Smith: quoted the plaintiff as saying, “Smith, I. *530 am hurt, * * “ * * * about at the time that he caught the drum.”
As opposed to this testimony the plaintiff testified that it .was - he who “wrestled” the drum from its pallet.. That it was in such close quarters that he had difficulty in “breaking” it, meaning getting it tilted and balanced on the bottom rim for rolling. He insists that it was this strain in an awkward and difficult -position which caused the injury to his back. At one point he testified that he “fought this drum out of that hole.” At another point, “I had to fight the drum out.” “I juggled the drum off the pallet board and Smith tried to help me roll it.” When they reached the elevator, plaintiff is alleged to have said to Smith, “Man, Smitty, take it, I’m bushed, you know.”
After reaching the loading dock below,plaintiff attempted to resume the unloading of the tuna fish from the truck. Upon stooping to pick up a case he claims that the pains in his back were so severe that he was unable to lift the case. He complained to the helpers and to his employer who sent him immediately to the company’s doctor.
Dr. Ewin, who examined and treated him initially, could find no objective symptoms of injury but did give him a series of twenty-four treatments, principally diathermy in nature. He was also examined by Dr. Gernon Brown, an orthopedic specialist, whose report was also negative. Plaintiff was discharged to return to work in approximately six weeks. Compensation was paid for this period. '
He complained of continuing severe pain and was seen by a second orthopedic surgeon, Dr. George Battalora, whose report likewise was negative. Dr. Battalora concluded his report: “We can find no orthopaedic cause for complaint in this man’s case. We feel that his symptoms are most probably based on psychogenic factors.” Thereafter he was seen and treated for Some time by Dr. Charles R. Smith, a psychiatrist. Dr. Smith reported:
“It is the impression of the undersigned [Dr. Smith] that the back pain is functional in origin, that the patient at this time is suffering with an acute anxiety neurosis related to. the trauma of the accident. He is an individual with an identity based largely on physical ability and sexual vitality, and the alteration of this pattern precipitated the acute anxiety apisode [sic]. Psychiatric treatment is indicated. Tranquilizing medication was given, and the patient has made several phone calls to express'his continued difficulty. He should be under continued psychiatric treatment.”
Dr. Smith testified at length on trial of this case and his testimony is very enlightening. The substance of his testimony may be summed up in the following excerpts:
“ * * * I felt that the back pain was part and parcel of a neurotic illness in which the original injury, which had occurred, may have produced some physical problem at the beginning, but long after the physical symptoms had disappeared there continued to be complaints and feeling of pain, which were kept in. motion, or kept alive, by various psychological factors. And I felt that the back pain was present because of a neurosis.
^
“This back pain turned out to be a kind of definite or a personal answer to some loss of physical and sexual strength. It was perpetuated by some natural changes going on and by the fact that he had an incapacitating injury that lasted for a period of time. Because of other things that set in, the back pain continued to go along.
“ * * * The consistency of his complaints and the nature in which he presented himself suggested to me that he had no understanding other than *531 the fact he was convinced within himself that his back is a torture to him. And even though this is based not on pure physical matters, but the matters of the mind, I felt that the pain was equally severe.
******
“I don’t — didn’t find anything else in discussing the factors surrounding the development of his symptoms [which] attributes his illness to other than the injury and attitudes surrounding the injury. It appeared to me that it was not so much the fact of being hurt physically, or at least that alone was not the fact, but there was a feeling or there were feelings regarding people who were, in a way, employer, I suppose — employers, I think might be said, that also went into this injury. This is a rather technical and involved matter in which his feelings toward a particular person and this trucking company and a form of hostility, I believe, helped to perpetuate his symptoms. So it was the accident which triggered him to have these feelings and resulted in his neurosis. Now, I can elaborate on that from the details, if it is necessary to.
* ‡ * ‡ * *
“I do believe that he is unable to perform hard labor at this time. He is thoroughly convinced that he has a severe injury. This is both an unconscious and conscious feeling, and it is of such rigidity, that is, his feelings, that I do not believe he can perform heavy duty work.”
This Court is not unmindful of the seriousness of the plaintiff’s condition as expertly described by Dr. Smith and of the applicability of the workmen’s compensation law to such cases when there is a direct and causal connection of the condition with an accident or injury sustained in the course of employment. Doucet v. Ashy Construction Co., La.App., 134 So.2d 665; Williams v. Bituminous Casualty Corporation, La.App., 131 So.2d 844; Tate v. Gullett Gin Company & Liberty Mutual Ins. Co., La.App., 86 So.2d 698. In each of these cases there was a preponderance of evidence to sustain a factual finding that the claimant suffered a traumatic injury.
The question here is, did the plaintiff sustain an accident or suffer a traumatic injury in the course of his employment?
“ ‘Accident’ means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.” LSA-R.S. 23:1021(1)
There is no evidence of objective symptoms to support the plaintiff’s claim, and further the trial judge found as a fact that the plaintiff did not suffer an accident on April 18, 1963. The testimony has been reviewed and carefully considered. There is no manifest error in the findings of the trial court in the absence of which its judgment will not be disturbed. Fortenberry v. Scogin, La.App., 149 So.2d 732; Oubre v. Judice, La.App., 147 So.2d 745; Hatten v. Olin Mathieson Chemical Corp., La.App., 112 So.2d 135; Patton v. Argonaut Underwriters Insurance Co., La.App., 110 So.2d 142; Orlando v. Polito, 228 La. 846, 84 So.2d 433; and many others.
In coming to this conclusion we have not been unmindful of the caution to be observed by the courts in claims predicated on traumatic neurosis or a conversion reaction. As suggested by the Court in Williams v. Bituminous Casualty Corporation, supra, we have scrutinized the record with extreme care for we agree that employers and insurers must be protected against unwarranted and unjustified claims, but that at the same time a deserving claimant should not be denied his right to recovery.
It is unnecessary that we discuss the testimony further, but there is abundant evidence to support an opinion that plaintiff has a definite predisposition to an -illness such as described by Dr. Smith. This *532 is reflected in the reasons stated for hts discharge from military service. To hold his employer responsible for his present psychosomatic pains would not be consistent with the evidence before us. The plaintiff has not discharged the burden of proving that he sustained an accident or injury in the course of employment.
The judgment appealed from is affirmed at plaintiff’s cost.
Affirmed.