247 So.2d 904 (1971)
Percy B. SMITH
v.
WILEY WOOD CONSTRUCTION COMPANY and Travelers Insurance Company.
No. 4453.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1971.
*905 Garrett & Carl, Robert T. Hughes, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevant, Carrere & Denegre, John C. Combe, Jr., New Orleans, for defendants-appellees.
Before REGAN, CHASEZ and LEMMON, JJ.
REGAN, Judge.
The plaintiff, Percy B. Smith, instituted this suit against the defendants, Wiley Wood Construction Company and Travelers Insurance Company, its workmen's compensation insurer, endeavoring to recover workmen's compensation in the amount of $35.00 per week for a period of 400 weeks. The plaintiff asserted that he was totally and permanently disabled as the result of a head injury incurred when he bent a piece of metal with a length of wood while employed by the principal defendant.
The defendants answered and denied the allegations delineated in the plaintiff's petition. They more specifically asserted that the plaintiff was not disabled and, alternatively, that any disability which he presently was experiencing had no causal connection with the accident.
After a trial on the merits, judgment was rendered in favor of the defendants dismissing the plaintiff's suit at his cost. From that judgment, he has prosecuted this appeal.
The record discloses that the plaintiff was struck in the head by a piece of wood which he and other laborers were using to bend steel rods in preparation for the pouring of a concrete pillar in a building. He testified that he was rendered unconscious as the result of this blow, which caused him head and back injuries.
Plaintiff originally sought an award for total and permanent disability predicated upon an injury to his head. However, in the course of the trial he also endeavored to prove the existence of an injury to his lower back and to establish that he was rendered mentally incapable of performing the duties of any gainful employment as a result of the injury. Plaintiff's counsel abandoned the back injury claim before us on appeal. It is therefore evident that the only question now posed for our consideration is one of fact, namely whether the injury in question caused or precipitated a disabling post-traumatic neurosis or psychosis.
In an attempt to prove his mental disability as a result of the accident, the plaintiff requested the appearance of two *906 local practicing psychiatrists, Dr. Robert Lancaster and Dr. Charles Steck. These physicians disagreed to some extent in their opinion as to the plaintiff's mental condition, Dr. Lancaster diagnosing that condition as a chronic schizophrenic reaction manifested by hallucinations and hypochondria, while Dr. Steck diagnosed the condition as a psychotic reaction, although he qualified this diagnosis with the statement that in his opinion plaintiff was "exaggerating his complaint a bit." Dr. Lancaster admittedly based his opinion on the history gathered by him from the plaintiff, without resort to any other source of information. His history included unconsciousness following the accident, which fact is, to some extent, disputed. It also includes the plaintiff's statement that he only suffered headaches after the accident, while there is some evidence from prior proceedings filed by the plaintiff and introduced into evidence that the plaintiff had suffered from headaches on a regular basis since May of 1967, one year prior to this accident. Plaintiff also told Dr. Lancaster that he had not seen any physicians before the accident and that he did not have any serious injuries, operations, or illnesses prior to the accident, all of which was shown at the trial to be patently untrue. However, he denied employment in any form following the accident, when, in fact, he was employed for a period of time at an A & G cafeteria in the City of New Orleans. Dr. Lancaster testified that these factors would have a definite bearing on his opinion as to the nature of the plaintiff's illness. In conclusion, Dr. Lancaster readily admitted that he diagnosed the plaintiff's mental condition as existing before the accident, but without any information as to the severity of Smith's condition before the accident it was impossible to estimate to what extent, if any, it was worsened or aggravated thereby. This testimony was thus inconclusive.
Dr. Charles Steck took a history from the plaintiff similar to that taken by Dr. Lancaster, and predicated his diagnosis on that history. He based his analysis of the plaintiff's present condition on two grounds. First, he assumed that the signs and symptoms complained of by the plaintiff after the accident had not been in existence prior thereto; and second, the assumption that the plaintiff was gainfully employed on a consistent basis before the accident and not gainfully employed on such a basis at the time of his evaluation in March, 1969.
To reiterate, some of the plaintiff's symptoms, such as headaches, were proved to have existed long prior to the accident and the plaintiff's work was spotty, the evidence establishing that he filed suit or obtained a settlement on three prior occasions alleging periods of disability from May of 1966 through March of 1968 from job related injuries. Moreover, after he sustained the injury which forms the subject matter of this suit he was employed by the A & G cafeteria on a somewhat regular basis from February 2, 1969 through July 27, 1969, the exact time when he was consulting Dr. Steck and lied to him that he was unemployed.[1]
It is thus apparent that the plaintiff deliberately misstated or withheld information on numerous occasions from treating and examining physicians and psychiatrists. Moreover, he apparently attempted to conceal relevant information requested by the defendants through discovery procedures. For example, he admitted only one prior law suit and claim in response to interrogatories when in fact there were at least three. Also, in response to a question at the time of a deposition he stated that he worked for A & G cafeteria for "about a month" when in fact he worked there approximately six months. It was also established that when he applied for work with *907 the A & G cafeteria, the plaintiff denied ever losing time from prior places of employment as the result of any accident and also denied collecting any workmen's compensation benefits. In addition, the plaintiff denied being arrested and charged with issuing worthless checks until confronted at the trial with his photographs in the police lineup and after repeated denials he admitted to common-law marriage relationships with more than one woman.[2] While he denied suffering from headaches before this accident, he did state these complaints to Dr. Colcolough in May of 1967. Moreover, he repeatedly denied any prior injuries to the physicians who examined him subsequent to this accident.
The inconsistencies and apparent falsehoods contained in the plaintiff's statements are too many to enumerate with greater particularity. The reading of the records of his prior suits and claims for compensation reveal that Dr. Richard Levy had serious doubt as to the truth of the plaintiff's responses to his testing, and Dr. Colcolough stated in an examination following the same accident that some of the subjective findings represented a hysterical reaction or an attempt at deception of the doctor. Moreover, for whatever value it may be, the Charity Hospital records relating to the accident disclose that the doctor making the record questioned whether the plaintiff was a malingerer.
The rationale of the jurisprudence permitting recovery for mental afflictions requires that the plaintiff be honest, sincere and truthful. Awards for mental conditions are not made when the record discloses that the plaintiff is dishonest, untruthful and unworthy of belief.[3]
In the area of workmen's compensation wherein a liberal interpretation in favor of the injured workman is required, Louisiana courts have consistently stated that it is essential that any case dealing with an alleged mental disability be reviewed by an appellate court with extreme caution and care.[4]
In Etienne v. Algernon Blair, Inc.,[5] this court remarked that three psychiatrists were of the opinion that the plaintiff was suffering from a traumatic neurosis and that he was sincere in his disability. We observed, however, that:
"`They both accepted at face value and without question what plaintiff told them.
* * * * * *
"`The evidence given by Drs. Paddison and Usdin is inconclusive and not based on medical tests and procedure, since no tests were made by these doctors; and are merely opinion evidence based solely on their naked belief of what plaintiff told them. These assumptions are not in accordance with the true facts as disclosed by the evidence, and should be disregarded * * *'"
It is axiomatic that the medical opinion formed exclusively from the claimant's statements are valid only insofar as the claimant relates and the doctor receives an accurate picture of the claimant's condition.[6]
*908 In view of the many inconsistencies and obvious mistatement on the part of the plaintiff, we find as a matter of fact that his testimony was not true, sincere, and worthy of belief. Moreover, it is abundantly clear that he did not relate to the psychiatrists treating him an accurate picture of his history or his mental condition, and the lack of value of the opinions of the psychiatric experts can be measured by this gauge.
We are, therefore, of the opinion that the lower court did not err when it concluded that the plaintiff failed to carry the burden of proving any disability as the result of a mental condition caused by this accident. On the contrary, his finding of fact was clearly correct.
For the foregoing reasons, the judgment of the lower court is affirmed. The plaintiff is to pay all costs incurred herein.
Affirmed.
NOTES
[1] It should be noted, however, that the plaintiff's employment record at A & G cafeteria was marred by several firings and rehirings, predicated upon absenteeism, insubordination, and use of obscene language within the range of hearing of customers.
[2] While these two items of evidence could probably have been excluded by objection, they were admitted into evidence without the objection of counsel and we are therefore required to consider them as part of the evidence.
[3] See Vezinat v. Marix, La.App., 217 So.2d 416 (1968); Miller v. United States Fidelity & Guaranty Co., La.App., 99 So.2d 511 (1957); Etienne v. Algernon Blair, Inc., La.App., 100 So.2d 533 (1958); Melerine v. Maryland Casualty Company, La.App., 166 So.2d 528 (1964); and Russell v. Bemis Brothers Bag Company, La.App., 169 So.2d 261 (1964).
[4] See for example Melerine v. Maryland Casualty Company, supra.
[5] Supra.
[6] See Legendre v. J. Ray McDermott and Company, La.App., 165 So.2d 621 (1964).