LEMMON, Judge.
In this appeal by both sides from a judgment awarding plaintiff workmen’s compensation benefits, defendants question the finding of total and permanent disability based on traumatic neurosis, and plaintiff complains of failure to award penalties and attorney’s fees.[1] The principal issue in defendants’ appeal is whether the record evidence supports a finding that the industrial accident caused or aggravated any psychological. condition so as to render plaintiff disabled within the contemplation of the workmen’s compensation act.
Plaintiff began working for defendant on June 14, 1974. Nineteen years old and a recent high school graduate, plaintiff had worked part time in a supermarket during his senior year before quitting after an argument with the manager and had worked in an automobile body shop for three weeks before quitting to take a job with defendant at a substantially higher rate of pay.
Plaintiff was hired by defendant through the boilermaker’s union and was scheduled to learn welding, but he was initially assigned work chipping insulation from the inside wall of a boiler. On his second day on the job he fell from a scaffold and sustained strain of the back and shoulder, contusion of the forearm, and multiple abrasions. He was checked at the hospital that day and two days later, and was then instructed to return to work.
After returning to limited duties for two days, he consulted an attorney, who referred him to a general surgeon. The doctor treated him, primarily for back complaints, through October 19, 1974, at which time both the treating physician and an orthopedic consultant opined that he had completely recovered from the injuries and was fit to return to work.
Plaintiff did not return to work, but on November 20, 1974 consulted a psychiatrist by arrangement through his attorney.[2] *557 The psychiatrist diagnosed a clinically overt depressive reaction, attributable to the accident, which impaired his ability to return to the same type of work. This diagnosis was based substantially on the doctor’s conclusion that plaintiff’s having “blown his chance for a worthwhile job” intensified his pre-existing feeling of inadequacy and incompetency. In addition to the signs of depression, the doctor also noted plaintiff’s statements that his weight had dropped from 330 to 280 pounds following the accident, that he had attempted suicide by taking 25 sleeping pills, and that in a fit of temper he purposefully ran his car into a tree.
Weekly interviews during December confirmed the psychiatrist’s initial impression as to plaintiff’s depression. Further noting long-standing personality traits of impulsiveness and irritability, as well as the feelings of inadequacy and incompetency which probably stemmed from his parents’ marital breakup, the doctor recommended extensive evaluation in a hospital setting to attempt controlling plaintiff’s impulsiveness and to explore his depressions. Plaintiff refused.
During December plaintiff obtained employment as a deckhand on a dredge boat, but quit after two days because of his fear of climbing a ladder. On December 31 he was rushed by his mother to a hospital when she found him sleeping in a car after he had taken some muscle relaxant pills. He told the psychiatrist in the hospital several days later that he took five pills (his trial testimony was 20), that he often took that many “nerve pills”, and that he had intended to take pills for nervousness before going back to his girl friend’s house but simply took the relaxants by mistake. The psychiatrist did not observe any overt signs of depression.
On January 13,1975, when plaintiff again refused hospital evaluation, the psychiatrist advised plaintiff he could no longer be responsible for him without hospitalization. Plaintiff had no further medical consultations before the trial two months later.
Plaintiff’s claim for disability benefits is based entirely on his inability to work because of a depressive condition causally related to the accident. Plaintiff testified that he is afraid of climbing and generally is afraid of working because it “seems like if I get a job I start looking at the ways I can get hurt”. And the psychiatrist opined that this stressful event (the accident) intensified plaintiff’s pre-existing personality traits and feelings of inadequacy and in-eompetency so as to render him incapable of working.
Evidence as to a neurotic disability must be closely scrutinized because of the nebulous and subjective nature of the disability. Smith v. Wiley Wood Constr. Co., 247 So.2d 904 (La.App. 4th Cir. 1971). A traumatic neurosis is an emotional illness which has its onset after a predisposed person sustains physical trauma. The pertinent inquiry is whether the neurosis would have occurred except for the trauma. In order to determine whether the trauma was the precipitating cause of the neurosis and thus the basis for legal liability, it is essential to compare such factors as the claimant’s behavior and work record before and after the trauma and to determine whether the patient was well and functioned normally until after the stress of the accident.
In the present case the psychiatrist’s opinion as to causation was based solely on facts related to him by plaintiff and his use of “psychiatric feeling”. Significantly, the facts related by plaintiff were largely uncorroborated and to some extent contradicted.
The emergency room records show plaintiff’s weight to be approximately the same at the time of the accident as his weight at the time of psychiatric consultation, thus refuting plaintiff’s claimed weight loss. Only plaintiff testified as to the alleged sleeping pill incident in September, and his story that his mother found him and just let him sleep for three days without medical consultation is implausible. Furthermore, plaintiff gave the only testimony as to the car smashing incident in his fit of temper, *558 and he didn’t mention that incident or the sleeping pill episode to the treating physician. Significantly, each incident occurred right after plaintiff had arguments with his girl friend. In this regard, plaintiff told the doctor that the girl had set a date for their marriage, but the girl denied this. Additionally, the psychiatrist concluded that the depression was caused by plaintiff’s “having blown it — i. e., his prospect of marriage and of starting in a lucrative trade”,[3] but the girl denied that they were ever engaged, thus casting more doubt upon the information furnished by plaintiff to the psychiatrist. Finally, the December incident involving the muscle relaxants (which also took place in relation to a visit to the girl’s house), was characterized by plaintiff himself as a mistake in taking the wrong medicine.
 Psychiatric opinion formed exclusively from a claimant’s statements is valid only insofar as the claimant relates an accurate account of the pertinent happenings. Smith v. Wiley Wood Constr. Co., supra. The statements relied on by the psychiatrist in this case were largely inaccurate, unreasonable or uncorroborated at trial. The case is further weakened by the lack of a prior consistent work history and the absence of evidence of changes in personality after the accident. Moreover, as to causation it is at least equally probable that any overt signs of depression observed by the psychiatrist in November and December were caused by his contemporary romantic disappointment as by the effects of the June accident.
Plaintiff’s only complaint reasonably supported by the overall record was his fear of climbing. But even considering the psychiatrist’s testimony as to this fear and the trial judge’s acceptance of that uncontra-dicted testimony, the evidence does not show that this condition disabled plaintiff within the contemplation of the workmen’s compensation act. Plaintiff was an unskilled laborer, whose training at chipping had taken only a few minutes and who was in his second day on the job. There is no showing that inability to climb because of a psychological condition placed plaintiff at a substantial competitive disadvantage on the common labor market. Furthermore, he admittedly had no fear of driving on expressways or of doing other dangerous tasks associated with laboring jobs.
We conclude that plaintiff simply failed to prove any compensable disabling condition causally related to the accident.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that plaintiff’s petition be dismissed. Each party is to bear its own costs.

REVERSED AND RENDERED.

. After both parties timely applied for a new trial from the original judgment and the trial court denied both applications, the court rendered an amended judgment, which modified the original decree by awarding certain expert fees (apparently in response to a motion to tax costs), but which also reiterated the original judgment as to the merits of the case. Plaintiff appealed on the last day for filing an appeal from the original judgment. Defendant filed a subsequent appeal, which although untimely as an independent appeal from the original judgment was timely as an answer to plaintiffs appeal.

. In casual conversation at an unrelated chance meeting between the attorney and the orthopedic consultant, it was mentioned that plaintiffs persistent complaints of back pain without orthopedic findings and his apparent fear of returning to work might make a psychiatric evaluation “worthwhile exploring”.

. Plaintiff told him “he and his fiancee” split up when his irritability increased after the accident.