388 So.2d 453 (1980)
Larry DAVENPORT, Plaintiff-Appellant,
v.
McCULLOUGH SERVICES BAROID DIVISION, N. L. Industries, Inc. and Employers National Insurance Company, in Solido, Defendants-Appellees.
No. 14216.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1980.
Rehearing Denied September 29, 1980.
*454 C. William Gerhardt, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., and Charles G. Tutt, Shreveport, for defendants-appellees.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied September 29, 1980.
HALL, Judge.
In this workmen's compensation case the plaintiff-appellant contends the trial court was clearly wrong in finding that plaintiff failed to prove a job-related brain injury and resulting disability, in admitting into evidence certain military service records and past employment records of the plaintiff, and in failing to award total and permanent disability benefits and penalties and attorney's fees. Concluding that there is substantial evidence to support the trial court's findings, we affirm.
Plaintiff, Larry Davenport, 23 years old at the time of the accident on April 2, 1978, was employed by McCullough Services, an oil field service company, as a serviceman. His job was primarily manual labor, assisting operators in perforating wells. As plaintiff was winding a cable back onto a truck, the cable struck him on the back of the head, rendering him unconscious. He regained consciousness within a few minutes and was taken to Bossier General Hospital where he was treated in the emergency room as an outpatient on April 2 and 3. He experienced headaches, dizziness, and nausea and was diagnosed as having suffered a slight laceration and a concussion.
Plaintiff was seen by Dr. Bailey, a general practitioner, on April 5, 7, and 10. Dr. Bailey released plaintiff from further treatment, but at plaintiff's request referred him to a neurologist.
Plaintiff was seen by Dr. Schwendimann, a neurologist, on April 19, May 5 and 26, June 6, 16 and 30. Dr. Schwendimann found no brain damage, physical or neurological problem but felt plaintiff could not return to work because of his anxiety and other emotional upsets which resulted from his injury on the job. At plaintiff's suggestion, *455 Dr. Schwendimann referred him to a psychiatrist. In August, the doctor reported to the defendant insurer that there was no reason from a neurological standpoint that plaintiff could not return to work.
Dr. McBride, a psychiatrist, examined plaintiff on July 10. His diagnosis was a conversion reaction with tension headache (psychophysiological headaches and dizziness). Dr. McBride recommended a psychological study which was performed by a psychologist, Mr. Rosenzweig, on July 20. Intelligence tests showed plaintiff to have an I.Q. of 76-77, borderline mental retardation. Mr. Rosenzweig found no organic brain damage or any recent changes in plaintiff's intellectual ability, but felt plaintiff was in need of psychotherapy in order to accept himself and his limitations more comfortably and learn how to cope more adequately with his life situations. Mr. Rosenzweig was of the opinion that plaintiff could function on the open labor market successfully but would probably do better in job placement if he had some extra training through vocational rehabilitation services.
Dr. McBride felt that Mr. Rosenzweig's study confirmed his initial impression and, believing that psychotherapy would benefit plaintiff, referred him to Dr. Phillips, another psychiatrist, for further treatment.
Dr. Phillips first saw plaintiff on August 1. In an effort to relieve the tension headaches, Dr. Phillips treated plaintiff as an outpatient at his office for about three weeks. Because plaintiff was not responding, the doctor had him admitted to Brentwood Hospital on August 21, where he stayed for 25 days undergoing evaluation and treatment. Neuropsychological testing was performed by Mr. Gucker, a psychologist, who was of the opinion plaintiff had definite evidence of organic brain syndrome (brain damage). The final diagnosis was organic brain syndrome, with severe depression and anxiety secondary to trauma.
Dr. Phillips continued to see plaintiff on at least a weekly basis through March 1979; then on a less frequent basis in April and June 1979.
At the instance of the defendant-insurer, plaintiff was examined by another psychiatrist, Dr. Ware, on May 22, 1979. Dr. Ware found no evidence of any disability, no evidence of brain damage, and believed plaintiff was consciously misleading or evasive with him. He saw "clear evidence suggesting to me that he was malingering."
Compensation benefits were paid to plaintiff from the time of the accident in April until September 11, 1978, at which time payment of benefits was terminated based on Dr. Schwendimann's August report to the insurance company.
At the trial of the case in June 1979, each side presented expert witnesses who reached opposite conclusions with reference to plaintiff's condition and each side also presented testimony of lay witnesses, primarily related to whether there had been a significant change in the plaintiff's ability and behavior after the accident and bearing on plaintiff's credibility. The thrust of the defense was that plaintiff's representations to his doctors were inaccurate and unreliable and that the doctors' opinions were not valid because they were based on inaccurate information.
The expert testimony upon which plaintiff primarily relied consisted of that of Dr. Phillips and Mr. Gucker. The thrust of their testimony was that, based to some extent on information furnished by plaintiff and to some extent upon a battery of psychological tests, there had been a dramatic change in plaintiff's intellectual ability, personality, and behavior since the accident due to brain damage caused by the accident, and that plaintiff was disabled from engaging in gainful employment.
The gist of the defense was that plaintiff had only suffered a slight concussion because of the blow to his head and that he had fully recovered from the effects of the accident. Defendant's experts, Dr. Ware and Mr. Rosenzweig, testified there was no evidence of brain damage and that plaintiff suffered from no job-connected disability. Dr. Schwendimann testified there were no neurological or physical reasons for plaintiff's complaints. Dr. Bailey testified as to *456 the minor nature of the physical injury received by plaintiff.
The lay testimony presented by both sides was designed to show either that plaintiff had changed since the accident or that plaintiff had not changed since the accident. Plaintiff's testimony as to his disabling headaches and dizziness, depression, anxiety, lack of interest in things, and the like, was corroborated by the testimony of his wife. Several of plaintiff's witnesses testified that he was functioning adequately in his work prior to the accident.
Defendants offered several witnesses who testified that plaintiff's work in his job prior to the accident was far less than adequate, that he was extremely slow to learn, that he had a bad attitude, and that he had been discharged from several jobs for these reasons. Military records admitted into evidence showed that plaintiff, who had enlisted in the Air Force for a six-year tour of duty, was discharged after less than two years because of unsuitability, without having achieved any advancement in rank. School records showed that plaintiff made poor grades in school, dropped out of high school after the tenth grade, and received a GED from high school through the Air Force.
The record establishes that the plaintiff gave inaccurate information to the examining experts concerning his pre-accident school, military service, and employment records. However, although the apparent change in plaintiff's intellectual level and behavior after the accident as compared to prior to the accident was an important factor in the experts' opinions and diagnoses, the plaintiff's experts testified that the information developed at trial would not change their opinions.
It is apparent from the trial court's written opinion that the testimony of plaintiff's expert witnesses was discounted to a large extent because their conclusion that plaintiff had experienced a dramatic change due to the accident was based largely upon inaccurate information furnished by the plaintiff. Generally, the experts were under the impression that plaintiff had achieved a high school diploma with average grades, that he functioned well in the military service with advancement in rank, and that he was functioning well in his work prior to the accident. To the contrary, the evidence establishes that plaintiff had never functioned adequately either in school, military service, or work.
It is the duty of the trial judge to evaluate the testimony of all of the witnesses, both lay and medical. After making such an evaluation, he may accept or reject any opinion expressed by any medical expert, depending on how impressed he is with the qualifications, credibility, and testimony of that expert. In short, the trial judge is obliged to evaluate testimony of a medical witness according to the same rules applicable to other witnesses. Jennings v. Halliburton Co., 346 So.2d 268 (La.App. 4th Cir. 1977).
In cases involving a claim of a brain or mental injury such as the one presented here, the court must proceed with utmost caution and exercise extreme care because of the nebulous characteristics of such a condition and the possibility of the symptoms being feigned. Evidence in cases of this nature should be scrutinized carefully. Jennings v. Halliburton Co., supra; Victoriana v. Orleans Parish Sch. Bd., 346 So.2d 271 (La.App. 4th Cir. 1977); Smith v. Wiley Wood Construction Company, 247 So.2d 904 (La.App. 4th Cir. 1971). The standard of proof in suits for recovery for mental afflictions requires that the plaintiff be honest, sincere, and truthful. Awards for mental conditions are not generally made when the record discloses that the plaintiff is dishonest, untruthful, or unworthy of belief. A medical opinion formed exclusively or in significant part from the claimant's statements is valid only insofar as the claimant relates and the doctor receives an adequate picture of the claimant's condition. Smith v. Wiley Wood Construction Company, supra.
Implicit in the opinion of the trial judge in this case is the factual conclusion that plaintiff failed to prove by a preponderance *457 of the evidence the claimed job-related disability. We are not permitted to disturb this finding unless it is "clearly wrong". Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.1978); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The trial court specifically accorded greater weight to the testimony of Dr. Ware and Mr. Rosenzweig than to that of Dr. Phillips and Mr. Gucker, the latter's opinions having been formed in substantial part on the basis of inaccurate background information furnished by the plaintiff. Their opinions were necessarily based in large degree upon the plaintiff's own statements of his headaches, dizziness, and other complaints. In evaluating plaintiff's testimony, the trial court was obviously influenced by the various misrepresentations made by the plaintiff to his employers and to his doctors. Very significantly, the trial judge noted that his own impression of plaintiff at trial was identical to that of Dr. Ware who found the plaintiff to be evasive and to be making a conscious effort to avoid or delay responses to tough or challenging questions. The transcript of plaintiff's testimony bears out the trial court's impression.
This is without question a very close case on the facts. There is substantial evidence supporting both the plaintiff's and the defendants' cases. On appeal the brief filed on behalf of the plaintiff vigorously and expertly attacks the trial court's findings of fact and emphasizes the evidence favorable to the plaintiff's case. For example, plaintiff points out that Mr. Gucker performed more extensive and refined psychological tests than did Mr. Rosenzweig. Plaintiff emphasizes that ordinarily greater weight should be given to the treating physician, Dr. Phillips, than to the physician, Dr. Ware, who only made one examination of the plaintiff. Plaintiff points out that there is no direct evidence contradicting the testimony of plaintiff and his wife as to his disabling headaches and dizziness.
After thorough consideration of the plaintiff's arguments and after review of all of the evidence we cannot say that the trial court was clearly wrong and we find that the trial court's conclusions are supported by substantial evidence, justifying its conclusions.
Plaintiff argues that the trial court was in error in admitting into evidence past employment records of the plaintiff and in admitting testimony concerning plaintiff's poor performance on jobs prior to the accident. These matters pertain directly to the factual issue of the plaintiff's claimed change in ability and behavior after the accident and were relevant and admissible.
Plaintiff also argues that plaintiff's service records should not have been admitted into evidence because they were not authenticated in the manner required by Article 1395 of the Code of Civil Procedure. Although the cover sheet of the entire package of service records offered into evidence contains a signature over the printed name of the Chief, Air Force Records Branch, is on a form provided by the National Personnel Records Center (Military Personnel Records) of the General Services Administration, states "the GSA seal is proof of these documents authenticity", and each page contains the GSA imprinted seal, the package of documents is not authenticated as required by code article. The trial judge correctly excluded the greater portion of the service records, which are in the record only as an offer of proof and were not considered by the trial court or this court. The trial court did allow into evidence, however, certain documents contained in the package which purport to bear the signature of the plaintiff. On cross-examination the plaintiff admitted the signature appeared to be his, and although he did not specifically identify the documents as having been signed by him, he did not deny that they contained his signature. The documents containing plaintiff's signature were properly identified and admitted into evidence, and reflect the matters relating to plaintiff's service record, particularly his early discharge for unsuitability, as mentioned above in this opinion.
*458 For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.