GUIDRY, Judge.
This is a worker’s compensation suit. The defendant appeals from the trial court’s ruling finding plaintiff, Mary Ann Ford, temporarily totally disabled from May 20, 1982 until May 1, 1984, and thus entitled to worker’s compensation benefits for that period subject to a credit for benefits paid during that time. Defendant argues on appeal that benefits should have ceased in November, 1982.
FACTS
Plaintiff, Mary Ann Ford, slipped and fell on a wet floor at Pinecrest State School on May 20, 1982, injuring her back. Plaintiff was employed by Pinecrest at the time of the accident as a cook and was injured during the course and scope of her employment.
On August 3,1982, plaintiff filed suit for worker’s compensation benefits, penalties and attorney’s fees against the State of Louisiana, through the Department of Health and Human Resources, Pinecrest State School. The State of Louisiana filed exceptions of prematurity and no right of action, claiming that it had paid compensation benefits to plaintiff plus all medical and hospital expenses incurred to date. The exceptions were referred to the trial on the merits. Defendant later admitted in its answer that it ceased paying benefits to plaintiff on November 17, 1982, pursuant to the advice of Dr. C.W. Lowrey.
Trial on the merits was held on June 20, 1984. The trial court rendered judgment in favor of plaintiff, finding her temporarily totally disabled from May 20, 1982 until May 1, 1984 and awarded benefits for that period of time, subject to a credit for benefits previously paid.[1] Defendant sus-pensively appealed from that judgment.
The sole issue presented is whether the trial court erred in awarding plaintiff temporary total disability benefits from May 20, 1982 through May 1, 1984.
DISABILITY
Mary Ann Ford testified that on May 20, 1982, while she was working at Pinecrest State School, she slipped on the wet floor in a hallway. She stated that she twisted as she fell and then slid into a refrigerator hitting her head. As a result of the blow to her head, she was momentarily rendered unconscious. When Mary Ann revived, she noticed a pain in the lower part of her back. She remained at work for the final hour of her shift and then went to Rapides General Hospital in Alexandria where she was treated by Dr. Wesley R. Dyer. Dr. Dyer prescribed muscle relaxants.
Mary Ann testified that she returned to work about a week after the accident. After working four or five days, she was unable to resume her normal duties because of the pain in her back. She left work and went to see Dr. Dyer again. She returned to work only one more time, but stated she had to leave after a couple of hours because of the pain in her back. Mary Ann has not returned to work since July, 1982.
Mary Ann stated at trial that she is still in constant pain, which precludes her from performing daily household chores. She *221 claimed that it hurt her to stoop, bend or lift things. She wears shoes with low heels and a heavy type of girdle which she testified relieves the pain a little.
Dr. Dyer was not called to testify at trial, however, plaintiff, without objection, introduced a letter written by him regarding his treatment of Mary Ann. In his letter dated September 30, 1982, Dr. Dyer admitted having seen Mary Ann at the emergency room of the Rapides General Hospital on May 20, 1982. Dr. Dyer found that Mary Ann had suffered contusions to her back and treated her with muscle relaxants. Dr. Dyer again saw Mary Ann on June 24, 1982. Mary Ann went to his office complaining that her back was hurting again. Dr. Dyer performed x-rays and a urinalysis, both of which proved to be normal. Dr. Dyer then prescribed Napro-syn. Dr. Dyer last examined Mary Ann regarding her back on August 4, 1982. At this time, Mary Ann was still complaining of pain in her lower back, and Dr. Dyer recommended that she see an orthopedist.
On November 4, 1982, at the request of her attorney, Mary Ann consulted Dr. C.W. Lowrey, an orthopedic surgeon in Alexandria. Dr. Lowrey took x-rays of Mary Ann’s lumbosacral region. All of the x-rays were normal except for a slight increase in Mary Ann’s normal swayback. Dr. Lowrey’s final diagnosis was that Mary Ann had experienced a lumbosacral strain at the time of accident, which had since resolved with no residual objective findings. Dr. Lowrey did not prescribe any medication for Mary Ann nor did he feel that any additional treatment was necessary. He finally recommended that she return to her former employment if there was an opening for her. Upon receipt of Dr. Lowrey’s report, defendant ceased payment of worker’s compensation benefits to Mary Ann.
Mary Ann returned to Dr. Lowrey on January 6, 1983 with continued complaints of middle back pain. Dr. Lowrey’s findings were basically the same as those of the November examination, i.e., he found no appreciable change in Mary Ann’s condition and no objective evidence of notable impairment. In his deposition of April 28, 1983, Dr. Lowrey stated:
“... there were so many voluntary differences as far as her findings that negated each other that clinically I did not feel that she had real significant objective findings that would substantiate a significant problem as far as her back.”
When questioned about the discrepancies which he observed in his examination of Mary Ann, Dr. Lowrey stated:
“Well, on the last evaluation which I don’t believe we mentioned, that had the most significant [sic]. She would bend to seventeen inches of her toes standing and in the sitting position she could bend to four and a half inches. The back motion is essentially the same and that’s a discrepancy of — what’s that — twelve and a half inches, and really a discrepancy of much more than three to probably five inches at most would be the outer limit that you would even consider. And she’s gone — well, double past that. She’s never demonstrated any notable calf atrophy. She would resist straight leg raising at forty-five degrees on the right and thirty degrees on the left, which means that I could lift her leg up only about this far on one side and this far on the other, and yet when she would sit up she would bring her fingertips to four inches of her toes which would totally negate that. And she also took the symptom that I asked her about, about one toe pulling up and one toe pulling down, which really doesn’t occur and she said yes, that’s when her back would spasm.”
Dr. Lowrey concluded that he was unable to find any evidence of any permanent residual back problem. He opined that Mary Ann was not in any need of further diagnostic study. Dr. Lowrey testified that, “I think she might have had a problem then (at the time of the injury) but I think as far as I would say that she has certainly over-reacted and has no objective residuals from it.”
*222 Mary Ann was sent by her attorney to Dr. Donovan Perdue, an orthopedic surgeon, on July 18, 1983 (over a year after the accident). Mary Ann complained to Dr. Perdue that her back pain had not diminished since her injury in May, 1982. Mary Ann related to Dr. Perdue how the pain in her back was aggravated by standing or sitting for prolonged periods of time and by bending, lifting, stooping or squatting. Mary Ann complained to Dr. Perdue of tenderness to pressure through the middle of her lower back. Dr. Perdue performed a neurological examination upon Mary Ann as well as x-rays from six different views. All examinations were normal. There was no evidence of lumbar disc protrusion, nerve root irritation, or spinal cord irritation.
When questioned in deposition about the possible cause of Mary Ann’s continued complaints of back pain, Dr. Perdue stated:
“Well, I couldn’t really put my finger on it. The only thing that I could diagnose was the chronic low back strain ... just based on a history of an injury and continued pain subsequently.”
Although Dr. Perdue could find no objective evidence of any permanent residual injuries, he diagnosed Mary Ann as having chronic low back strain. Dr. Perdue instructed Mary Ann on some back exercises, recommended a lumbosacral corset and prescribed Norgesic Forte, a muscle relaxant. When questioned about his conclusion that Mary Ann suffered from chronic low back strain, Dr. Perdue answered, “My diagnosis and recommendations are based on what she tells me ... that she hurts ... and that she had an injury ... and that she’s still hurting.”
Dr. Perdue was questioned as to whether, considering the fact that Mary Ann had no prior history of back problem, it could be concluded that the injury that she suffered, and still experiences pain from, originated from her fall in May, 1982. In response, Dr. Perdue stated:
“Well, I think that’s a logical conclusion. I don’t think ... as I mentioned earlier ... ordinarily a simple back strain ... you would expect it to resolve itself spontaneously within a reasonable period of time ... and backache is very common ... and frequently people experience it for no particular reason at all. But ... and I have no medical way of showing for certain that the pain that she may experience now was direct ... directly caused by that injury. I think ... to answer the question ... is that just common sense reasoning would tell you that if she never had any problems with her back before ... and she had an injury ... and then she hurt her back ... and it hurt ever since then, you would have to assume some relationship from the injury to the continuing pain.”
Dr. Perdue concluded that Mary Ann would need no further diagnostic study unless a change occurred in her condition. He also testified that he told Mary Ann that he thought she was able to work, although if her job required a lot of bending and lifting, she might look for lighter work if she didn’t think that she would be able to do it. This was the only occasion on which Dr. Perdue examined Mary Ann, and she saw no other doctors after that.
In his written reasons for judgment dated August 16, 1984, the trial judge explained his finding of Mary Ann’s disability as follows:
“Plaintiff seriously indicates that she is not able to perform the work she was doing at the time of her slip and fall injury on May 20, 1982, and she further contends that if she should do any type of reasonable work at all, that she would be doing so in substantial pain.
Dr. C.W. Lowrey, an orthopaedic surgeon, who originally saw her, and subsequently examined her, indicates flatly that he does not accept her statements about her condition, and that he can find no objective evidence indicating any disability, and that he feels that she could return to work.
Dr. Donovan Perdue, also an ortho-paedic surgeon, who examined plaintiff one time at the request of her attorney, indicated that although he could find no *223 objective evidence of disability, he did not flatly disbelieve the plaintiff when she contends of pain.
The court is faced with this situation where neither medical doctor could find any objective evidence of disability, and the track record of plaintiffs employment, at least recently, has been somewhat less than steady. What the plaintiff does have going for her, however, is that throughout her life time she endeavored to work and earn her way in life.
Considering all of the facts and circumstances, the court concludes that plaintiff was totally and temporary [sic] disabled from May 20, 1982, until May 1, 1984, and that she is entitled to workmen’s compensation benefits from the date of injury through May 1, 1984, subject to credit for any workmen’s compensation benefits paid during that time.”
The law is clear that the claimant in a compensation ease bears the burden of proving to a legal certainty and by a reasonable preponderance of the evidence that he is disabled. Conjecture and probability may not serve as a basis for judgment. Guillory v. Employers Mutual Liability Ins. Co. of Wisconsin, 110 So.2d 188 (La.App. 1st Cir.1959); Elie v. St. Paul Fire & Marine Ins. Co., 408 So.2d 297 (La.App. 3rd Cir.1981); Bordelon v. Ranger Ins. Co., 413 So.2d 962 (La.App. 3rd Cir.1982), writ, denied, 420 So.2d 448 (La.1982).
It is also well established that, on appellate review, a factual determination by the trial court should not be reversed unless the trial court is found to be clearly wrong from an examination of the record as a whole. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir.1979), writ, denied, 374 So.2d 660 (La.1979); Delco v. Heritage Manor Nursing Home, 441 So.2d 309 (La.App. 3rd Cir.1983), writ, denied, 443 So.2d 1123 (La.1984).
After carefully reviewing the record, including the depositions of the two orthopedic surgeons who examined the plaintiff, we are convinced that the trial judge was clearly wrong in awarding compensation benefits beyond November, 1982. The record contains no evidence supporting the conclusion that plaintiff’s disability extended beyond November, 1982, except for plaintiff’s own assertions of continuing pain, which assertions are not corroborated by lay testimony or medical evidence. Although Dr. Perdue’s testimony in deposition expressed his view that plaintiff was experiencing pain, presumably he did not consider the pain expressed to him to be substantial or disabling as he recommended that plaintiff return to work. Additionally, his conclusion that plaintiff suffered some pain was admittedly based purely on plaintiff’s recitation of pain to him as a physician.
It is well settled that the medical opinion formed exclusively or in significant part from claimant’s statements is valid only insofar as the claimant relates and the doctor receives an accurate picture of the claimant’s condition. Smith v. Wiley Wood Construction Co., 247 So.2d 904 (La.App. 4th Cir.1971); Davenport v. McCullough Services Baroid Division, 388 So.2d 453 (La.App. 2d Cir.1980), writ. denied, 394 So.2d 616 (La.1980). We therefore find that the trial court clearly erred in relying on Dr. Perdue’s testimony in finding that plaintiff continued to suffer disabling pain in her back due to her May, 1982 injury, especially in light of Dr. Perdue’s own testimony that he found no objective evidence to substantiate such pain and that he was of the opinion that plaintiff could return to work. The medical evidence in the case was undisputed as to the fact that there were no objective findings to support plaintiff’s claim of pain. Additionally, Dr. Low-rey’s testimony casts serious doubts as to the reliability of plaintiff’s claims due to the numerous discrepancies found during the physical examinations of plaintiff. Finally, we note that there is no basis in the record for the termination date of plaintiff’s disability as found by the trial court, i.e., May 1, 1984. There is no medical evidence in the record supporting a finding of disability beyond November 17, 1982. On the other hand, plaintiff testified, at the *224 time of trial, that she continued to suffer disabling pain. The significance of the date May 1,1984 is not found in the record.
In light of all of the evidence in the record, we find that plaintiff failed to prove by a preponderance of the evidence that her disability extended beyond November 17, 1982, the date when defendant ceased paying benefits, and the trial court clearly erred in finding otherwise.
DECREE
For the above and foregoing reasons, the judgment appealed from is amended so as to order and decree that there be judgment herein in favor of plaintiff, Mary Ann Ford, and against defendant, State of Louisiana, through the Department of Health and Human Resources, Pinecrest State School, for total and temporary disability benefits from May 20, 1982 through November 17, 1982, subject to a credit for any worker’s compensation benefits previously paid. Costs of these proceedings on appeal are assessed against plaintiff-appellee.
AFFIRMED AS AMENDED.

. Although not specifically mentioned in the judgment, the trial court apparently overruled defendant's exceptions and denied plaintiffs demand for penalties and attorney’s fees. All issues presented on which evidence has been offered are considered disposed of by final judgment, and demands passed over in silence are considered as rejected. R.G. Claitor's Realty v. Juban, 391 So.2d 394 (La.1980).